607 So.2d 1036 (1992)
Jerry D. CASH & Elizabeth L. Cash, Plaintiffs-Appellants,
v.
CHARTER MARKETING COMPANY, Defendant-Appellee.
No. 91-714.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*1037 Darrell Avery, Jonesboro, for plaintiffs-appellants.
Stafford, Stewart & Potter, Paul Boudreaux, Alexandria, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and COREIL[*], J. Pro Tem.
JOSEPH E. COREIL, Judge Pro Tem.
Plaintiffs, Jerry Cash and his wife, Elizabeth, filed this suit for damages sustained in a slip and fall accident in a convenience store owned by defendant, Charter Marketing Company. A jury found defendant partially at fault and assessed Jerry Cash's damages at $10,000 and his wife's damages at $5,000. The assessment of 50% fault to Jerry Cash resulted in a proportionate reduction of each award.
Plaintiffs filed motions for judgments notwithstanding the verdict, additur, and alternatively, for a new trial. The trial court denied the motions, and this appeal followed.

FACTS
On August 11, 1988, Jerry Cash entered the Charter convenience store to purchase cold drinks. When he approached the cash register counter, Cash slipped on what he testified to be a spot of tobacco spit. His left leg slid forward, his buttocks landed on his right foot, and his right knee hit the ground. There were no witnesses to the fall. However, the cashier on duty testified she heard the fall, a groan, and did see him pull himself up.
The cashier placed Cash on a makeshift chair of crates. Cash testified he felt a "pop" in his back and, within ten to fifteen minutes, began to feel pain and numbness in his back, right buttock, and right leg. He asked the cashier for an accident report, which was filled out.
Cash sued Charter Marketing, claiming damages for his injuries. His wife, Elizabeth, joined in the suit, claiming loss of consortium.
The case was tried on September 18, 19, and 20, 1990. A twelve-member jury awarded the following damages:

Jerry D. Cash:
 Special damages ............. $ 5,000
 General damages ............. $ 5,000
 _______
 $10,000
Elizabeth L. Cash:
 Loss of consortium .......... $ 5,000

On appeal, plaintiffs contend: (1) the jury erred when it reached a verdict finding plaintiff 50% at fault; (2) the jury erred in awarding an inadequate sum of damages; (3) the trial judge erred by refusing to grant plaintiffs' motion for JNOV and for additur.

ASSIGNMENT OF ERROR NO. 1
The first assignment of error was that of the finding by the jury that plaintiff was 50% negligent. This point is but mildly disputed by the plaintiffs. In determining whether to sustain the verdict of the jury, we must consider whether its findings as to the percentages of fault were clearly wrong or manifestly erroneous. Thompson v. Colony Ins. Co., 520 So.2d 1158 (La.App. 3 Cir.1987).
We find that the jury clearly erred in finding plaintiff to be at fault since there was absolutely no evidence presented to indicate that plaintiff saw or should have seen a small puddle the size of a half dollar on the floor. Plaintiff, Cash, testified he entered the Charter convenience store and walked directly to the cold drink coolers located in the back of the store. After selecting four colas, he headed toward the cash register. He set two of the colas down on the counter as he approached the register; he turned and pivoted on his left leg. It was on this turn that his left leg slipped from beneath him. After the fall, he examined the floor and saw what he described as a spot of tobacco spit. He observed a scuff mark through it about a foot long and remaining substance the size of a quarter. He testified he does not chew tobacco nor did he spit on the floor.
*1038 Linda Lucas, the cashier on duty, also testified and corroborated plaintiff's testimony as to the existence of a spot. She was positioned behind the cash register and, after plaintiff slipped, she went around the counter to the area where plaintiff slipped. She noted the spot and described it as looking like spit, more or less clear in color. She corroborates that there was a skid mark in it with debris from his boot. Ms. Lucas actually touched the substance and described it as clear, with a consistency not like water, "more of a mucus to it."
Once the plaintiff proves the existence of a foreign substance on the floor of a business establishment that caused him to slip and fall, the burden shifts to the store to exculpate itself from a presumption of negligence. La.R.S. 9:2800.6; Kavlich v. Kramer, 315 So.2d 282 (La.1975); Smith v. Winn Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4 Cir.1980).
Ms. Lucas testified as to clean-up measures taken on her shift the day of the accident. She recalls only spot mopping the area where the slip occurred about thirty to forty-five minutes before plaintiff entered the store and did not mop the entire floor from the time her shift began at 1:30 P.M. until the accident at 5:30 P.M.
We cannot say plaintiff is at fault for failing to see the substance, considering its size, color, or consistency. There was not sufficient contrast of the color of the substance with the floor to warrant a finding of 50% comparative fault. No reasonable person can be expected to have seen such a spot. The jury clearly erred in its finding.

ASSIGNMENT OF ERROR NO. 2
As we have stated, the jury awarded $15,000 total in special and general damages and loss of consortium.[1] The plaintiff presented evidence of special damages in the form of medical and prescription expenses in the amount of $36,500, which he claims were a necessary result of the slip and fall at defendant's convenience store.

PRIOR BACK INJURY
Plaintiff had a prior back injury. He injured his lower back over four years earlier, on March 17, 1986, in a fall from an oil derrick. From that time until one month before his fall at the Charter store, Cash underwent multiple myelograms, a CAT scan, discograms, and MRI's, as well as thermograms and nerve conduction tests. Cash visited his orthopedic surgeon, Dr. Robert E. Holladay, IV, almost monthly, with leg and back pains. He was diagnosed in September of 1986, with a disc disruption. He was treated with pain killers, muscle relaxants, and tranquilizers. Cash's complaints continued and, by January of 1987, Dr. Holladay found internal tearing of the L5 S1 disc and performed a diskectomy and interbody fusion of the disc.
However, Cash's pains did not abate. He visited Dr. Holladay monthly and, in September of 1987, Dr. Holladay performed a second surgery to remove a fragment of disc that broke loose at the L5 S1. Still, Cash complained chronically, visiting Dr. Holladay nearly monthly. He had restricted motion in flexion and extension in bending forward and backward. He was admitted to the hospital on June 1 of 1988, with complaints of severe back pain and pain down his legs, with numbness and tingling. On his final visit, June 22, 1988, before the fall at the Charter Marketing store, he complained of pain, numbness, and tingling in his back and legs.

ACCIDENT AND SUBSEQUENT PROBLEMS
On Cash's next visit, August 17, 1988, a week after his fall at the convenience store, Dr. Holladay had no new diagnosis but felt he had muscular symptoms and an aggravation of the previous back problems. Cash continued on the pain medication, muscle relaxants, and tranquilizers and continued to see Dr. Holladay, but not as frequently. In September of 1988, he underwent *1039 another MRI. In October of 1988, Cash was still complaining of numbness and tingling in his right leg but admitted he felt some improvement since the August and September visits. On February 1, 1989, he returned to Dr. Holladay, who discovered reduced muscle tone in his right thigh, probably due to lack of use from favoring the right leg. Another set of diagnostic tests were conducted in April of 1989 and in January of 1990. Suspecting Cash had some movement or instability between the fifth bone and first sacral bone, Cash underwent another fusion. This time, Dr. Holladay placed a plate and screws at the area for a more solid fusion. Cash was still complaining of severe pain just days after this surgery. In March, 1990 x-rays were taken and, the following month, Dr. Holladay admitted Cash into the hospital because Cash complained that his pains were intolerable. At that time a CAT scan was performed and Cash underwent another surgery to remove the plate and screws and change the angle of the screw. The original placement was very close to the nerve which runs down the leg and caused Cash's problems.
Cash testified that he noticed a difference in his right leg fairly soon but still had remaining slight aching in that leg. He was discharged and did not return until June, 1990, for follow-up examinations. As of the trial date, Cash still claimed he had some pain but was getting some strength back in his legs.
Defendant's expert, Dr. Richard Warren Levy, a neurosurgeon, testified after reviewing plaintiff's medical reports, hospital records, test results, and viewing his x-rays. He testified that the surgery in January of 1990, the second fusion, was necessary because the operations performed in 1987 were unsuccessful. It was Dr. Levy's opinion that Dr. Holladay apparently did not test the solidity of the first fusion. Dr. Levy testified that Cash's continued complaints were consistent with those of a person who had never obtained a stable fusion. He opined that a fall could have aggravated Cash's symptoms, but would not have caused any actual anatomical physical changes in the spine. He also testified that the May, 1990 surgery, to remove the plate and screws, was necessary because Dr. Holladay placed the screws in the wrong place initially.
The plaintiff has the burden of proving both his injuries and a causal connection between the injuries and the tort, by a preponderance of the evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). When the defendant's negligent act aggravates a preexisting condition or injury, the victim is entitled to compensation for the full extent of aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). A causal link between the negligent act and the degree of aggravation must be established. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1 Cir. 1986).
The jury apparently took the view of the defendant and doubted whether the fall at Charter was the cause of any present disability or that the preexisting problems plaintiff suffered were aggravated to the extent plaintiff claims as a result of the fall. The inference to be drawn from the verdict is that plaintiff only suffered a temporary injury to his back in the fall, and major portions of his injuries were either preexisting or due to the unsuccessful surgery in 1987. Unfortunately, in this case, as in all other jury cases, we are unaware of the factual considerations which the members of the jury used to reach the verdict. The facts related above are some of the facts which the jury could have accepted and relied upon to reach its conclusion.
In this case, the jury was required to make credibility determinations. Two experts testified by video deposition, allowing the jury to hear and see the testimony. The question of assessment of credibility of competing expert witnesses is best left to the trier of fact, who has the opportunity to observe the respective demeanor of the witnesses. Simoneaux v. Davis, 397 So.2d 835 (La.App. 4 Cir.1981). Where there is evidence before the trier of fact which, upon its reasonable evaluation as to credibility, furnishes a reasonable basis for the *1040 finding, it should not be disturbed in the absence of manifest error, i.e., unless clearly wrong. Ardoin v. Evangeline Parish Sch. Bd., 376 So.2d 372 (La.App. 3 Cir. 1979).
There was ample evidence tending to show that plaintiff's problems were due to the unsuccessful surgeries which likely would have given him trouble without the accident. Under the tendency of the evidence as disclosed, we are not persuaded to disturb the judgment as one founded upon an inadequate amount of damages awarded.

ASSIGNMENT OF ERROR NO. 3
Plaintiff contends that the trial court should have either granted an additur or a new trial on the issue of damages. We find no evidence to support that contention. The standard for determining whether to grant a JNOV is clearly established. In Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Supreme Court, quoting from Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), explains the standard as follows:
"When `the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions [directed verdict and judgment n.o.v.] is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied....'"
496 So.2d at 273, 274.
In reviewing a JNOV, we apply the manifest error rule to the judge's conclusions on liability and quantum. Robertson v. Penn, 472 So.2d 927 (La.App. 1 Cir.1985), writ denied, 476 So.2d 353 (La.1985). After a thorough review of the record and all the evidence therein, in the light most favorable to plaintiffs, and drawing all reasonable inferences most favorable to the plaintiffs, we find the trial court was not manifestly erroneous in denying plaintiffs' motion for JNOV and additur.

DECREE
For reasons assigned, the judgment of the trial court is reversed only insofar as it allocated 50% fault to the plaintiff, Jerry Cash. The awards of $10,000 to Jerry Cash and $5,000 to Elizabeth Cash are not to be reduced. Therefore, it is ordered, adjudged and decreed that the judgment of the trial court be amended to reflect awards in those amounts. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are taxed one-half to plaintiffs and one-half to defendant, Charter Marketing.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[*] Honorable Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The judgment awarding Mrs. Cash $5,000 for loss of consortium is, in our opinion, excessive in light of the evidence in the record. However, since Charter has not answered the appeal requesting such relief, we will not disturb the award on appeal.