645 So.2d 1269 (1994)
Emile KOEPP
v.
SEA-LAND SERVICE, INC.
No. 93-CA-2562.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1994.
*1271 Mary Ann Hand, Salvador E. Gutierrez, Jr., Gutierrez and Hand, Chalmette, for plaintiff/appellee.
*1272 Gerard T. Gelpi, J. Timothy Woodard, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, Sidney D. Torres, III, Michael R. Delesdernier, Chalmette, for defendant/appellant.
Before KLEES, JONES and WALTZER, JJ.
JONES, Judge.
This is a personal injury case arising out of an accident which occurred on October 13, 1990. The plaintiff, Emile Koepp sustained personal injuries while attempting to make repairs to his shrimping boat, the KOOL BREEZE. At the time of the accident, the KOOL BREEZE was moored at a dock owned by Louisiana Power and Light (LP & L) near the intersection of the Gulf Intercoastal Waterway and the Mississippi River Gulf Outlet. The SEALAND CONSUMER, a vessel owned by defendant Sea-Land Service, Inc. and being operated by defendant, Captain Ronald Blancq, entered the outlet and passed the vicinity where the KOOL BREEZE was moored.
The SEALAND CONSUMER caused a suction and subsequent wave wash. The plaintiff, unable to get off the boat timely, attempted to climb the ladder on the KOOL BREEZE to keep from getting squeezed or thrown overboard. However, the force of the wave caused the plaintiff to be thrown through the ladder into the picking box, thereby sustaining serious injury to his back.
The plaintiff instituted this litigation against defendants, Captain Ronald Blancq and Sea-Land Service, Inc. seeking damages for the injuries suffered in the accident. The trial court issued a judgment in favor of the plaintiff. The trial court found that the defendants were negligent in failing to keep a proper lookout, in traveling at an excessive and unsafe rate of speed, and in negligently creating an excessive swell thereby causing the plaintiff's injuries.
The trial court fixed the plaintiff's damages at $553,343.01. The trial court itemized the plaintiff's damages as follows:

PAST LOSS OF EARNINGS AND PAST
LOSS OF EARNING CAPACITY $ 11,758.00
FUTURE LOSS OF EARNING CAPACTY $133,774.00
DAMAGES TO BOAT AND LOSS OF
EQUIPMENT $ 2,000.00
MEDICAL BILLS $ 5,811.01
PAST AND FUTURE PHYSICAL PAIN
AND SUFFERING $150,000.00
PAST AND FUTURE MENTAL PAIN
AND SUFFERING $100,000.00
LOSS OF ENJOYMENT OF LIFE AND
PERMANENT RESIDUAL DISABILITY $150,000.00

Defendants, Captain Ronald Blancq and Sea-Land Service, Inc. appeal the judgment of the trial court ordering them to pay the plaintiff, Emile Koepp, a total of $553,343.01. On appeal, the defendants raise numerous assignments of error.

SEA-LAND SERVICE, INC.'S APPEAL
Sea-Land Service, Inc. argues: 1) the plaintiff failed to establish that the SEALAND CONSUMER was the vessel which caused the accident; alternatively, 2) the evidence establishes that the SEALAND CONSUMER was not traveling at an excessive speed when it passed the dock at the time the plaintiff was injured; 3) the trial court applied the wrong standard of law to find defendant negligent; 4) the trial court erred in finding the plaintiff to be free of any fault for causing his injuries; 5) the trial court erred in accepting the testimony of plaintiff's experts and rejecting the testimony of the defendant's experts; and 6) the trial court erred in awarding excessive and duplicative damages.

CAPTAIN RONALD BLANCQ'S APPEAL
Captain Blancq argues: 1) the trial court erred in failing to require the plaintiff to prove that his damages resulted from defendant, Captain Blancq's gross negligence or willful misconduct as required by La.R.S. 34:1001; 2) the SEALAND CONSUMER was not the vessel which caused the plaintiff's alleged damages; 3) the plaintiff was wholly or partially responsible for his own damages; and 4) the trial court awarded the plaintiff an excessive amount of damages.

Identity of the Vessel causing the Accident
Appellants argue that the trial court erred in finding that the vessel which caused plaintiff's *1273 alleged injuries was the SEALAND CONSUMER.
Appellants argue that the testimony indicates that the SEALAND CONSUMER passed the LP & L dock prior to the time that the incident allegedly occurred, that the description given of the vessel which caused the wave swell did not fit the SEALAND CONSUMER, and that the testimony given by the plaintiff concerning the speed of the offending vessel conflicted with the testimony of another witness concerning the speed the SEALAND CONSUMER was traveling at the time she passed the LP & L dock.
In support of the contention that the SEALAND CONSUMER passed the LP & L dock prior to the accident, appellants argue that the testimony of the plaintiff concerning the time the accident occurred conflicted with the testimony of other witnesses. Since the time given by the plaintiff also conflicted with the time which the SEALAND CONSUMER's logs and the pilot's trip ticket indicate the SEALAND CONSUMER would have passed the site of the accident, appellants argue the SEALAND CONSUMER could not have been the vessel which caused the wave swell. Additionally, appellants rely on the fact that earlier descriptions of the offending vessel and testimony concerning the speed the vessel was traveling support a finding that the offending vessel was not the SEALAND CONSUMER.
The issue of whether the vessel which caused the wave swell was the SEALAND CONSUMER was an issue of fact to be determined by the fact finder. The finding that the vessel causing the wave swell was the SEALAND CONSUMER is supported by the direct testimony from the plaintiff that the name on the vessel passing at the time of the wave swell was "SEALAND CONSUMER". Additionally, Chris Lougriss testified that when he used the radio aboard the KOOL BREEZE to try to ascertain the identity of the passing ship, an unidentified third party on the radio informed him that the ship which had just passed was the SEALAND CONSUMER.
While the defendants were able to introduce logs to pinpoint the time the vessel was in the vicinity, none of the plaintiff's witnesses could pinpoint the exact time of the incident. This was not surprising in light of the fact that trial of this matter occurred almost three years after the accident. However, the testimony that the plaintiff saw the name of the vessel on the ship and that Mr. Lougriss was told the name of the vessel on the radio was uncontroverted. This testimony supports the finding of the trial court that it was in fact the SEALAND CONSUMER that caused the accident. The trial judge evidently gave more credence to the testimony of the plaintiff and Mr. Lougriss than to the testimony and logs submitted by the defendants.
This court cannot set aside a trial court's finding of fact in the absence of manifest error or unless the finding is clearly wrong. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). Where there is conflicting testimony, findings based on reasonable credibility determinations and reasonable inferences of fact will not be disturbed upon review. See Stobart v. State through DOTD, supra at 882, Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989), and Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The issue to be resolved by this court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State through DOTD, supra at 882. Having reviewed all the testimony and exhibits, we conclude that the finding that the vessel involved in the accident was the SEALAND CONSUMER was reasonable.

Applicable Law of Negligence
By their next assignment of error, appellants argue that the trial court erred when imposing liability on the defendants without making a specific finding that Captain Blancq's actions constituted gross negligence or misconduct. Appellants argue that the proper standard for determining whether liability can be imposed on a river port pilot is found in La.R.S. 34:1001(D), which provides:
Any party seeking to hold a pilot acting under his state commission issued in accordance with this Chapter liable for damages or loss occasioned by the pilot's errors, *1274 omissions, fault, or neglect shall be required to prove by clear and convincing evidence that the damages arose from the pilot's gross negligence or willful misconduct.
Appellees argue that this state statute is preempted by federal maritime law, which places a much higher standard of care on a river port pilot. See Atlee v. Packet Co., 88 U.S. (21 Wall) 389, 396-97, 22 L.Ed. 619 (1874); Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 798 n. 6 (5th Cir.1977), cert. denied, sub nom., Furness Withy & Co., Ltd. v. Bunge Corporation, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 518 (1978), Melbourne Bros. Const. v. Gnots-Reserve, 461 So.2d 1145, 1149 (La.App. 5th Cir.1984).
Because we find that the record supports a finding that the pilot was grossly negligent in traveling through the area at an excessive rate of speed while the plaintiff's boat was moored at the dock with its running lights on, we need not decide whether federal maritime law preempts application of La.R.S. 34:1001(D) in the instant case. The pilot is liable for consequential damages under both state and federal standards of negligence.
Defendants also argue the trial court erred in relying on navigation requirements imposed on vessels in crowded harbors and in dense fog to find that the actions of the SEALAND CONSUMER in a shipping channel were negligent.
The testimony of the plaintiff's witnesses supports a finding that quite a few vessels were routinely found in the shipping channel. Moreover, pursuant to the provisions of 33 U.S.C. 2006 which the trial court also relied upon, the SEALAND CONSUMER was clearly negligent for traveling at a speed which did not allow the personnel aboard the SEALAND CONSUMER to see that the KOOL BREEZE was moored at the dock. The finding that this action constituted negligence is further bolstered by the testimony that the KOOL BREEZE had its lights on and the dock at which it was moored was also well lit. Additionally, Captain Blancq had passed this area on numerous occasions and had seen boats moored at the dock on at least one previous occasion. Yet, neither the Captain nor any of the personnel aboard the SEALAND CONSUMER could testify to having observed the KOOL BREEZE while it was moored at the dock on the night in question.
Nor do we find merit in defendants' contention that the trial court erred in applying a presumption of fault applicable only where properly moored vessels are damaged by wave wash to a case involving personal injuries aboard an improperly moored vessel.
Koepp and Lodriguss testified that the boat was properly moored to the dock. Moreover, defendants presented no expert evidence at trial to support a finding that the vessel was not properly moored. Consequently, the trial court did not abuse its discretion by implicitly accepting the testimony of the plaintiff's witnesses.
Accordingly, none of defendants' arguments concerning the applicable standard to be used in determining negligence has merit.

Negligence of the defendants
In its next assignment of error appellants argue the trial court erred in finding defendant SEALAND CONSUMER was negligent in a) failing to keep a proper lookout; b) travelling at an excessive and unsafe speed; and c) creating an excessive swell.
In his reasons for judgment, the trial judge stated:
The evidence demonstrates that the Defendants were negligent in failing to keep a proper lookout, in traveling at an excessive and unsafe rate of speed, and in negligently creating an excessive swell thereby causing the Plaintiff's injuries.
The evidence adduced at trial clearly supports the trial court's finding that the negligence of the defendants caused the plaintiff's injuries.
Lodriguss testified that prior to the accident he had the radio tuned to channel 67 (the bridge to bridge frequency channel for ship traffic). He never heard anyone try to contact the boat regarding their approach to the intersection of the intercoastal waterway and Mississippi River Gulf Outlet. Further, after the SEALAND CONSUMER passed through the area, he tried to contact the ship *1275 via radio but received no response. Receiving no response, Loudriguss radioed channel 13 and asked a friend if he could get the name of the ship. The friend informed Loudriguss that the name of the ship which had just passed was SEALAND CONSUMER. Loudriguss then returned to channel 67 and tried calling the vessel by name, but still received no response. He also tried calling the vessel on channels 16 and 13, but did not receive a response.
Defendant's argument that the trial court erred in finding there was no lookout aboard the SEALAND CONSUMER has no merit. The defendants produced no credible evidence to support a finding that a lookout was present when the SEALAND CONSUMER went past the dock. The trial court apparently concluded that had a lookout been present, the crew could have spotted the KOOL BREEZE moored at the dock and could possibly have taken some type of action to avoid the accident. Nor do we find merit to the argument that the court erred in finding that failure to have a lookout constituted negligence since the crew on the forward bridge of the SEALAND CONSUMER could see anything the lookout could have seen. No testimony was adduced at trial to demonstrate that anyone aboard the SEALAND CONSUMER observed the KOOL BREEZE moored at the dock.
The record also contains evidence to support a finding that the SEALAND CONSUMER was traveling at a speed fast enough to cause a tremendous wave swell five to six feet high. The wave swell was so high that it came over the top of the bulkhead and caused the boat to rock hard enough for tools on deck and fifty pound bags of salt on the cabin to slide overboard.
In addressing the issue of what constitutes excessive speed the trial court correctly referred to the applicable standard for determining negligence in this case when it noted:
33 U.S.C. 2006 (Rule of the Inland Navigational Rules) provides:
Section 2006. Safe speed (Rule 6)
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.
In determining a safe speed the following factors shall be among those taken into account:
(a) By all vessels:
(i) the state of visibility;
(ii) the traffic density including concentration of fishing vessels or any other vessels;
(iii) the maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;
(iv) at night the presence of background light such as from shore lights or from back scatter of her own lights;
(v) the state of wind, sea, and current, and the proximity of navigational hazards;...
Irrespective of whether the harbor was crowded at the time that the SEALAND CONSUMER passed through the area, the provisions of the above captioned statute dictate that vessels travel at a safe speed at all times. Consequently, the issue of whether the court incorrectly considered cases involving crowded harbors need not be considered.
The court correctly applied the test enunciated in New Orleans Steamboat Co. v. M/T Hellespont Glory, 562 F.Supp. 391 (E.D.La. 1983) for determining the duty of the SEALAND CONSUMER when passing a dock. In that case the court stated:
A ship passing piers or docks where other vessels are tied up is obligated to proceed carefully and prudently so as to avoid creating unusual swells or suction which would damage craft properly moored or installations along the shoreline. The moving vessel must take into consideration the reasonable effects to be anticipated from its speed and motion through the water and must take such precautions by way of reduction of speed or alteration of course as may be reasonably necessary to prevent such damage. (citations omitted).
New Orleans Steamboat Co. v. M/T Hellespont Glory, supra at 392.
*1276 Despite the fact that Captain Blancq was very familiar with the traffic in this area and despite the fact that he was an experienced river boat pilot, he allowed the SEALAND CONSUMER to proceed past the LP & L dock at a speed sufficient to damage the plaintiff's boat and cause a tremendous suction. Moreover the testimony indicates that Captain Blancq never saw the KOOL BREEZE moored to the dock. These factors are sufficient to support the trial court's finding that Captain Blancq was negligent in allowing the SEALAND CONSUMER to proceed through the area in question at an unsafe speed and without keeping a proper lookout.

Negligence of the Plaintiff
By their next assignment of error, appellants argue the trial court erred in finding plaintiff, Koepp, free from fault. Appellants argue that the trial court should have assigned some fault to the plaintiff since the plaintiff was negligent in 1) jumping from a place of safety onto the KOOL BREEZE as it allegedly thrashed about; 2) failing to move to a place of safety as the dangerous swells approached the KOOL BREEZE; 3) having the KOOL BREEZE moored in an unsafe fashion at a restricted dock with its running lights on; 4) failing to attempt to contact the approaching ship until it was too close to the KOOL BREEZE to take effective action; 5) failing to move the KOOL BREEZE away from the LP & L dock; and 6) failing to show warning lights or flares to warn approaching vessels that the KOOL BREEZE was in distress.
The record contains ample evidence to support a finding that the sole cause of this accident was the negligence of the defendants in proceeding through the channel at an excessive speed, failing to observe the plaintiff's boat moored to the dock, and causing an enormous wave swell. When confronted with the unusually large wave, the plaintiff took reasonable measures to avoid injury. Moreover, as stated earlier, the record is completely devoid of any credible evidence to substantiate a finding that the plaintiff's boat was not properly moored to the dock. Nor do we find merit to the assertion that the plaintiff was negligent in failing to show warning lights or flares since the testimony clearly indicates that both the KOOL BREEZE and the dock had sufficient light to allow a passing vessel to observe the KOOL BREEZE. Defendants' contention that the plaintiff's negligence should bar and/or reduce his recovery has no merit.

Expert Witnesses
Appellants argue the trial court manifestly abused its discretion by accepting, without explanation or rationale, the testimony of plaintiff's navigation experts and rejecting entirely the testimony of defendant's navigation experts.
The law is well-settled that where the testimony of expert witnesses differs, the trier of fact has great discretion in determining the credibility of the evidence, and a finding of fact in this regard will not be overturned unless clearly wrong. DeSambourg v. Board of Com'rs for Grand Prairie Levee Dist., 608 So.2d 1100, 1108 (La.App. 4th Cir.1992), affirmed, 621 So.2d 602 (La. 1993), citing A. Copeland Enterprises v. Harimaw, Inc., 528 So.2d 707 (La.App. 5th Cir. 1988), writ denied 531 So.2d 475 (La.1988).
The assessment of credibility of competing expert witnesses is best left to the trier of fact, who has the opportunity to observe the respective demeanor of the witnesses. Cash v. Charter Marketing Co., 607 So.2d 1036, 1039 (La.App. 3 Cir.1992).
Where there is evidence before the trier of fact which, upon its reasonable evaluation as to credibility, furnishes a reasonable basis for the trial court's finding, it should not be disturbed in the absence of manifest error. Ardoin v. Evangeline Parish School Bd., 376 So.2d 372, 373-374 (La.App. 3d Cir. 1979).
In the instant case both plaintiffs' and defendants' experts were qualified and the trial court's reliance on the testimony of plaintiff's experts was a proper exercise of its discretion. Having reviewed the record, we find the trial court's findings of fact and conclusions of law are amply supported by the evidence.

*1277 Excessiveness of Damages
Appellants argue the trial court erred in awarding $400,000 in general damages because 1) there is no competent evidence to establish that the plaintiff suffered significant injury beyond a chronic back strain as a result of the accident and 2) the award is excessive even for a herniated disc.
The standard of appellate review of general damages awards was enunciated in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), wherein the court stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In Youn, supra, the Louisiana Supreme Court recognized the need for examining the particular effect of the injuries on the particular party to the litigation when it stated:
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
Youn, supra at 1260.
Dr. Llewellyn, an expert in the field of neurosurgery, diagnosed plaintiff as having extruded disc herniation at the L4-5 and L5-S1 levels, as well as a bulging disc at L3-4.
Dr. Llewellyn, the plaintiff's treating physician, first saw the plaintiff on May 14, 1991. At that time the plaintiff stated that he injured his back in an incident that had occurred on a boat. Plaintiff underwent several medical tests. An MRI documented the presence of an irreparable tear of the two lower most joints in his lower back and showed extruded disc herniation of L4-5 and L5-S1. An EMB verified the finding on the MRI of the involvement of the L-5 dermatome. Dr. Llewellyn concluded that plaintiff had a neurosurgical aspect of these injuries, that is, disc ruptures with nerve infragment involving his left leg. Plaintiff elected to pursue conservative treatment for six to eight months to see if pain would lessen so that he might escape an operating procedure. He felt this method was acceptable and on 6/11/91 he started that program.
*1278 Plaintiff came back four months later on October 4, 1991. He was not working. In light of his family history of diabetes, tests were performed and he was found to be diabetic. The doctor placed him on diet control for weight and diabetes as part of the rehabilitative efforts. Plaintiff was placed on medical restriction by Dr. Llewellyn, who advised the plaintiff to be active only to tolerance, not to attempt light work, to rest each morning and each afternoon after taking hot showers, and to take his medication and lie down. Dr. Llewellyn also advised the plaintiff against being active to the point of being tired or sore and to strenuously avoid those types of exertions or amounts of exertion that inevitably made his back or leg pain worse. The medical testimony supports a finding that the plaintiff's injuries were severe and necessitated a drastic change in the kinds of activities the plaintiff could engage in.
Considering the severe nature of the plaintiff's injuries, we are unable to say that the trial judge abused his "much discretion". Pursuant to Youn, supra, this court has no authority to decrease the general damage award of the jury.
Next, appellants argue the trial court awarded duplicative damages for loss of enjoyment of life and permanent residual disability in that such damages are included in the separate award for both physical and mental pain and suffering and for loss of earning capacity made by the court.
The trial court awarded plaintiff $400,000.00 in general damages and $145,532.00 in damages for loss of past and future earning capacity. The trial court arrived at the $400,000.00 figure by awarding $150,000.00 for past and future physical pain and suffering, $100,000.00 for mental pain and suffering, and $150,000.00 for loss of enjoyment of life and permanent residual disability. The defendants do not contest the $145,532 award for loss of past and future earning capacity. However, defendants argue that the trial court erred in awarding $150,000 for loss of enjoyment of life and permanent residual disability.
In Downie v. United States Line Co., 359 F.2d 344, 347 (3rd Cir.1966), cert. denied 385 U.S. 897, 87 S.Ct. 201, 17 L.Ed.2d 130 (1966), the court discussed the various elements of damages allowed to be recovered under maritime law, noting:
The injured seaman is also entitled to compensation, again based on life expectancy at the time of injury, for the physical and mental effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life.... (emphasis added) [citations omitted].
The plaintiff is entitled to receive compensation for the physical effects which impair his ability to engage in life enjoying activities; plaintiff is also entitled to receive compensation for the mental effects which impair his ability to engage in life enjoying activities. Plaintiff is not entitled to receive compensation for physical and mental effects of the injury plus compensation for loss of enjoyment of life, for loss of enjoyment of life constitutes the basis for the physical and mental components.
In Hanson v. Reiss Steamship Co., 184 F.Supp. 545 (D.Del., 1960) the Court analyzed frequently used terms such as `inconvenience', `embarrassment', `loss of pleasure and enjoyment of life' and `inability to engage in normal activities' in arriving at reasonable amounts of damages. The Hanson court held that these quoted terms are cited merely as showing factors sometimes involved in pain and suffering, especially mental suffering. Id. at 553. The $154,000.00 award for loss of enjoyment of life is duplicative and the award must be amended.
Appellants also argue the trial court erred 1) by finding defendants caused plaintiff's inability to return to gainful employment; 2) by failing to give consideration to plaintiff's two previous back injuries and his post incident neck and back injuries, and 3) by failing to consider the fact that the plaintiff failed to follow his physicians's orders and thereby mitigate his damages.
The evidence supports a finding that plaintiff is unable to return to gainful employment, particularly in view of the numerous medical restrictions placed on him by Dr. Llewellyn. Plaintiff was apparently engaged *1279 in gainful employment prior to the accident and there is no evidence to support a finding that the previous accidents adversely affected his ability to work. Additionally, the record contains no evidence of any purposeful, intentional failure on the part of the plaintiff to follow physician's orders. Thus, this assignment of error has no merit.
Nor do we find any merit to the appellants' contention that the trial court erred in awarding damages based on a determination plaintiff could not work at all in the future when plaintiff worked for almost all of the 33 months between the accident and trial and when his treating physician's diagnosis of herniated disks was equivocal. The testimony adduced at trial supports a finding that the plaintiff missed a great deal of work during the time in question because of his back problems. Additionally, his treating physician placed numerous restrictions on him. The fact that he attempted to continue working in spite of his medical problems does not negate a finding that he will not be able to continue to work in the future.
Consistent with the views expressed in this opinion, that portion of the judgment of the trial court awarding the plaintiff $150,000.00 for "loss of enjoyment of life and permanent residual disability" is reversed. The judgment of the trial court is amended to award the plaintiff a total of $403,343.01. In all other respects, the judgment of the trial court is affirmed.
REVERSED IN PART, AFFIRMED AS AMENDED AND RENDERED.