809 So.2d 1076 (2002)
Amy HOYT
v.
The GRAY INSURANCE COMPANY, Cembell Industries, Inc. and Adam Alphonso.
Moria Coulonge
v.
The Gray Insurance Company and its Insureds, Adam Alphonso and the Albach Company, Inc.
No. 2000-CA-2517, 2000-CA-2518.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 2002.
Rehearing Denied March 28, 2002.
*1078 Sherry A. King and J. Van Robichaux, Jr., Chalmette, Counsel for Plaintiff/Appellant.
Sophia G. Pappas, Frederick A. Miller & Associates, Metairie, Counsel for Defendant/Appellee.
John V. Baus, Jr., David S. Daly, Jennifer C. DeBlanc, Baus, Hammond & Daly, L.L.P., New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr., and Judge MICHAEL E. KIRBY.
DENNIS R. BAGNERIS, SR., J.
Plaintiffs and defendants appeal a judgment awarding damages to plaintiffs as a result of an auto accident. For the reasons that follow, we affirm in part and reverse in part.
Plaintiffs Moria Coulonge ("Ms.Coulonge") and Amy Hoyt ("Ms.Hoyt") filed suit for injuries from a collision with an Albach Company vehicle driven by Adam Alphonso ("Mr.Alphonso"). On April 15, 1999, the trial court granted a partial summary judgment in favor of plaintiffs finding that Mr. Alphonso's actions were the sole and proximate cause of the accident, leaving damages as the only issue for trial. After a three-day bench trial, the judge found in favor of plaintiffs and awarded the following damages:

Ms. Coulonge's Damages
 General Damages:
 Past, Present and Future Pain
 and Suffering $100,000.00
 Special Damages:
 Medicals incurred to date $ 6,634.50
 Past lost wages $ 17,518.00
 ___________
 TOTAL $124,152.50
Ms. Hoyt's Damages
 General Damages:
 Past, Present and Future Pain
 & Suffering $150,000.00
 Special Damages:
 Medicals incurred to date $ 9,781.53
 Future psychological treatment $ 2,500.00
 Past lost wages $ 19,817.00
 ___________
 TOTAL $182,098.53

On March 24, 2000, the trial court denied defendants' motion for a new trial. Both parties now appeal this final judgment.
On appeal, plaintiffs' sole assignment of error is that the trial court erred in failing to award them damages for future lost wages and/or loss of earning capacity. The defendants appealed and assigned the following errors: (1) the trial court erred in admitting into evidence and/or basing an award on the opinion of Dr. Daniel Seltzer as to Ms. Hoyt's cervical C-5 radiculopathy, *1079 because the diagnosis was made solely based upon an EMG test which Dr. Seltzer testified he neither ordered nor was qualified to interpret; (2) the trial court erred in its award to Ms. Coulonge because the record does not support the conclusion that her lower back injury was caused by this accident; (3) the trial court erred in awarding past lost wages to Ms. Hoyt because the record establishes that she was neither working nor looking for work on the day of the accident; and (4) that the trial court's award for general damages is grossly excessive, because the record evidences that if any injury was caused to either plaintiff, it was at best only an aggravation of a preexisting condition.

FACTS
The accident occurred on January 16, 1998 on East Judge Perez Drive near its intersection with Laplace Street in St. Bernard Parish. Ms. Coulonge was driving her vehicle on East Judge Perez Drive while Ms. Hoyt accompanied her as a passenger. As Mr. Alphonso was driving on Laplace Street toward its intersection with E. Judge Perez Drive, he pulled into the median of East Judge Perez Drive, failed to yield to the favored traffic, and struck the plaintiff's vehicle on the driver's side. At the time of the accident, Mr. Alphonso was driving a Ford pick-up truck owned by Albach Company,[1] and insured by the Gray Insurance Company.[2] Ms. Coulonge had been in a prior motor vehicle accident in 1996; the emergency room records, from the accident of 1996, reveal that she visited the hospital with complaints of pain in her lower back.

Ms. Hoyt's Injuries
Although Ms. Hoyt did not feel injured immediately after the accident, she began suffering pain in her lower back later that morning and was treated in the emergency room of Chalmette Medical Centers by Dr. George Baird. The medical records show that Ms. Hoyt had two areas of minimal tenderness in her upper and lower back. Although Ms. Hoyt did not complain of neck pain, Dr. Baird did conduct an examination of her neck. The records indicate that Ms. Hoyt's neck was "supple, nontender," and had "no pain on range of motion." Dr. Baird testified that there was no evidence of a nerve injury to Ms. Hoyt's neck. The x-rays taken that day of Ms. Hoyt's chest, rib cage, abdomen, thoracic spine and lumbosacral spine showed no trauma related abnormalities. Dr. Baird's diagnosis of Ms. Hoyt at discharge was that she had a soft tissue injury consisting of a thoracic and lumbar spine strain. Ms. Hoyt was sent home with a prescription for pain medication to treat mild to moderate pain.
On February 10, 1998, Ms. Hoyt visited Dr. James Shoemaker, a board qualified Chiropractic Orthopedist, with complaints of pain in her lower back up to her neck. Dr. Shoemaker testified that his objective findings were that Ms. Hoyt had muscle spasms in her neck, mid-back, and low back. Ms. Hoyt tested positive on the Kemp test, an orthopedic test used to determine joint function in the lower part of the spine. Dr. Shoemaker's preliminary diagnosis of Ms. Hoyt was that she had "cervical and thoracic joint dysfunction,... lumbosacral joint dysfunction, cephalalgia, which refers to the headaches, and cervicodynia, which is neck pain." Ms. Hoyt also visited Dr. Shoemaker on February 12, 1998, complaining of the same symptoms as she had on February 10, 1998. Dr. Shoemaker testified that on February 12, 1998, he gave Ms. Hoyt a *1080 note to return to school. Dr. Shoemaker continued to treat Ms. Hoyt for the pain in her spine and neck until July of 1998. When asked in his deposition whether Ms. Hoyt had a disc injury, Dr. Shoemaker testified that he "believed from the beginning there may have been disc component problems involved, both in the neck as well as the low back, but there was no definitive diagnosis made to that effect."
Dr. Daniel Seltzer, an expert in the field of orthopedics, began treating Ms. Hoyt on September 21, 1998. Dr. Seltzer's physical examination of Ms. Hoyt at that time produced the following findings:
She [Ms. Hoyt] was alert and cooperative. Her head was normal. Her cervical spine did show some muscle spasm and decreased range of motion which resulted in loss of about 50 percent range of motion. Lateral bending and extension produced some increase in her discomfort, axial loading did not. She had tenderness but no spasm in the trapezius regions on both sides of the neck. The range of motion of the shoulders and the upper extremities were normal.
Neurologically, she was intact in both extremities. Her thoracic spine was unremarkable. There was no abnormal curvature or spasm. The lumbar spine showed mild decrease range of motion. There was muscular tenderness, but no obvious spasm. Lateral bending and extension produced mild increase in her discomfort. The range of motion of her hips, knees, ankle and feet were tested and found to be normal. A neurologic examination of her lower extremities were normal.
Dr. Seltzer ordered a Magnetic Resonance Imaging ("MRI") test of Ms. Hoyt's lumbar spine, which showed a bulge at L-5, S-1. Ms. Hoyt also had an MRI of her cervical spine, which was normal. Dr. Seltzer testified that he ordered an Electromyography ("EMG") test of Ms. Hoyt's right upper extremity because of her complaints of neck pain and pain into her right shoulder. Dr. Seltzer testified that "the result of the first EMG showed that there was evidence of findings compatible with a C5 radicalopathy." The second EMG showed basically the same result.
Based upon Dr. Seltzer's testing and the physical examination, he diagnosed Ms. Hoyt as having "a damaged nerve root without evidence of disc herniation, and that her diagnosis in the lumbar spine would be that she has bulge at L-5, S-1." However, Dr. Seltzer testified that Ms. Hoyt has not had any neurological symptoms associated with the injured nerve in her neck and that the only objective evidence he can base his opinion of the nerve problem is on the EMG test.
Dr. Seltzer testified that he would relate the cervical injury directly to the accident at issue, and that "as to the lumbar spine, I think her condition is either compatible with a condition which was caused by the motor vehicle accident or could have been aggravated by the motor vehicle accident, if, in fact, it was preexisting". Further, Dr. Seltzer testified that in his opinion, Ms. Hoyt "could still do light duty work."

Ms. Coulonge's Injuries
Ms. Coulonge was treated by Dr. George Baird at Chalmette Medical Centers on January 16, 1998. Ms. Coulonge complained of having pain in her left shoulder, forearm, neck, and back. The x-rays taken that day of Ms. Coulonge's cervical spine, thoracic spine, left shoulder and left forearm were all normal. Dr. Baird's diagnosis of Ms. Coulonge at discharge was that she had a soft tissue injury to the left shoulder, and a cervical and thoracic spine strain. Ms. Coulonge was sent home with the instructions to use "warm, moist heat for neck and back, as needed; ice elsewhere that is sore, 20 minutes *1081 off and 20 minutes on; take medication as prescribed."
Dr. Daniel Seltzer testified that he first examined Mr. Coulonge on November 18, 1998, ten months after the accident. Dr. Seltzer performed a MRI scan of both her lumbar spine and thoracic spine. Although the MRI scan of her thoracic spine was within normal limits, the MRI scan of the lumbar spine did show some evidence of deterioration of the L-4, 5 disc, as well as some mild posterior herniation at the L-4,5 level. Dr. Seltzer's diagnosis was that Ms. Coulonge suffered a soft tissue injury of the thoracic spine and either bulge or herniation of the L-4,5 disc. Dr. Seltzer also testified that even though she had a prior motor vehicle accident, he would relate these injuries "more likely than not to the motor vehicle accident" of January 16, 1998. Dr. Seltzer testified that Ms. Coulonge is capable of doing light work.

Plaintiffs' Appeal
Plaintiffs complain that they should have recovered for loss of future earning capacity, arguing that their injuries reduced their ability to perform full time work. We find no merit to this argument.
Loss of earning capacity refers to a person's potential and compensates a victim for his lost ability to earn in the future. Masters v. City of New Orleans, 94-2349, p. 2 (La.App. 4 Cir. 9/28/95), 662 So.2d 125, 126. The trial court should consider plaintiffs physical condition before the accident, plaintiffs work record, amount earning in previous years and the probability that except for the injury the plaintiff would have earned similar wages the rest of (her) life. Id.
The plaintiffs earnings at the time of the accident are relevant but not necessarily indicative of her past or future earning capacity. Finnie v. Vallee, 620 So.2d 897, 900 (La.App. 4 Cir. 5/27/93), writ denied by 625 So.2d 1040 (La.1993). As stated by this Court in Finnie, "[w]hat is being compensated is the plaintiffs lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity." Id.
Plaintiffs argue that the uncontroverted testimony of Bob Roberts, their vocational evaluator, that neither plaintiff was able to perform full time work requires an award for loss of earning capacity. However, Mr. Roberts' testimony was contradicted by Dr. Seltzer, the plaintiffs' treating orthopedist, when he testified at trial that both Ms. Coulonge and Ms. Hoyt could still do light duty work. Although Dr. Seltzer testified at trial that Ms. Hoyt should avoid reaching overhead, using her arm extended and out to the side, lifting more than five to ten pounds on a regular basis, and repeated stooping and squatting, he did not testify that she was unable to work. Likewise, Dr. Seltzer never testified that Ms. Coulonge could not work; rather, he recommended that she should avoid "repeated stooping, squatting, repeated lifting or carrying of over ten to fifteen pounds." At the time of trial, both Ms. Hoyt's and Ms. Coulonge's physical and neurological exams were normal. For these reasons, we find that the trial court did not abuse its discretion by denying Ms. Coulonge and Ms. Hoyt recovery for loss of earning capacity.

Defendants' Appeal
Defendants argue in their first assignment of error that the trial court committed manifest error by (1) allowing Dr. Seltzer to base his opinion that Ms. Hoyt suffered a neck injury on an EMG test he neither administered nor was capable of interpreting, and (2) not ordering Ms. Hoyt to undergo a third EMG. Thus, defendants allege that that the record lacks sufficient admissible proof to find *1082 that Ms. Hoyt suffered a cervical nerve injury. We find no merit to defendants' argument.
LSA-C.E. art. 702 entitled "Testimony by experts," provides the following:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. (Emphasis added)
LSA-C.E. art. 703 entitled "Bases of opinion testimony by experts," provides the following:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Further, jurisprudence holds that an expert witness testifying in court need not be the person who actually compiled the statistics or data for comparison; he or she may rely on data prepared by others. Barre v. Bonds, 99-1806 p. 21 (La.App. 4 Cir. 5/10/00) 763 So.2d 60, 72. We find no legal principle that prohibits Dr. Seltzer from forming an opinion based on a medical test administered and interpreted by another doctor. Thus, we find that it was not an abuse of discretion for the trial judge to allow Dr. Seltzer to base his opinion of Ms. Hoyt's neck injury on an EMG test that was administered and interpreted by another doctor. Further, we fail to find that the trial judge abused his discretion by not ordering Ms. Hoyt to undergo a third EMG test. The trial court found the EMG test to be too invasive and painful for Ms. Hoyt to undergo a third time, especially in lieu of the fact that the second EMG showed the same damage and diagnosis as did the first one.
We will now address whether the record contains sufficient proof for the trial court to have found that Ms. Hoyt sustained injuries as a result of the January 1998 accident. We must note "where there is conflicting testimony, findings based on reasonable credibility determinations and reasonable inferences of fact will not be disturbed upon review." Koepp v. Sea-Land Service, Inc. 93-2562 p. 5 (La. App. 4 Cir. 11/17/94), 645 So.2d 1269, 1273. Thus, the issue to be resolved by this court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id.
In this case, both Dr. Shoemaker and Dr. Seltzer testified that they treated Ms. Hoyt for neck and back pain subsequent to the January, 1998, accident. Dr. Shoemaker testified that he "believed from the beginning there may have been disc component problems involved [with Ms. Hoyt], both in the neck as well as the low back...." Dr. Seltzer testified that he ordered an EMG testing of Ms. Hoyt's right upper extremity because of her complaints of neck pain and pain into her right shoulder. Dr. Seltzer testified "the result of the first EMG showed that there was evidence of findings compatible with a C5 radiculopathy." The second EMG showed basically the same result. Dr. Seltzer testified that he diagnosed Ms. Hoyt as having "a damaged nerve root without evidence of disc herniation...." Dr. Seltzer also ordered an MRI of Ms. Hoyt's lumbar spine, which showed a bulge at L-5, S-1. In lieu of this testimony, we fail to find that the trial court abused its discretion in awarding Ms. Hoyt damages for injuries resulting from the accident.
Defendants argue in their second assignment of error that the trial court erred in its finding that there was sufficient *1083 evidence to award Ms. Coulonge damages for injuries sustained in the January 1998 accident. Again, this court should not disturb a finding of the trial court if the evidence before the trier of fact furnishes a reasonable basis for the factfinder's finding. Koepp, 645 So.2d at 1273.
Ms. Coulonge visited the emergency room the day of the accident with complaints of arm pain, neck pain, and mid and upper back pain. Ms. Coulonge testified that following the accident, she would experience a dull pain in her lower back. She testified that sometimes the pain would increase and cause pain down her legs, and that her "legs and feet would get numb and tingly...." Ms. Coulonge testified that before the accident, she did not have any neck or back pain, and that she never had numbness in her feet.
Dr. Seltzer performed an MRI scan of Ms. Coulonge's lumbar spine and her thoracic spine. While the MRI scan of the lumbar spine did show some evidence of deterioration of the L-4, 5 disc, as well as some mild posterior herniation at the L-4,5 level, there was no evidence of any nerve impingement. Dr. Seltzer's diagnosis was that Ms. Coulonge suffered a soft tissue injury of the thoracic spine and either a bulge or herniation of the L4,5 disc. Defendants argue that the bulging disc did not occur as a result of the 1998 accident because Ms. Coulonge did not complain of low back pain that day in the emergency room. However, neither Dr. Seltzer nor Dr. Gorden Nutik, defendants' orthopedic expert, testified that the bulging disk could not have happened on January 16, 1998; rather, they testified that they were unsure as to when Ms. Coulonge's bulging disc appeared. Accordingly, after a review of the record, we find that there was sufficient evidence for the trial court to find that Ms. Coulonge did suffer back injuries as a result of the accident.
Defendants' third assignment of error is that the trial court erred in its award of past wages to Ms. Hoyt. Specifically, defendants cite to Thumfart v. Lombard, 613 So.2d 286 writ denied by 617 So.2d 1182 (La.1993), to support their argument that because Ms. Hoyt was neither working nor looking for work at the time of the accident, she lost no past wages.
It is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident. Start v. National Tea Co., 94-2633 p. 7 (La.App. 4 Cir. 5/16/95), 655 So.2d 769, 775, writ denied by 95-1801 (La.11/3/95), 661 So.2d 1380. Not only is the award for past lost earnings not subject to the much discretion rule, but the past lost earnings are susceptible of mathematical calculation from proof offered at trial. Id.
The record indicates that Ms. Hoyt was not working at the time of the January, 1998 accident. She testified that she quit her job at Piccadilly before the accident, sometime in 1997[3]. In fact, Ms. Hoyt testified that she "did not want that job," and that she couldn't recall whether or not she had applied for other jobs during that time period. Because Ms. Hoyt was neither working nor looking for work at the time of the accident, we find that the trial court erred in its award of $19,817.00 for past lost wages.
Defendants' fourth assignment of error is that the trial court erred in its grossly excessive quantum awards. The defendants contend that the $150,000.00 award to Ms. Hoyt for past, present, and future pain and suffering, and its *1084 $100,000.00 award to Ms. Coulonge for past, present, and future pain and suffering, is excessive, considering the nature of their injuries.
General damages cannot be fixed with pecuniary precision because they involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Hanson v. Benelli, 97-1467 p. 28 (La.App. 4 Cir. 9/30/98), 719 So.2d 627, 642, writ denied by 98-2754 (La.1/8/99), 735 So.2d 632. In reviewing awards for general damages, this court is not to decide what it thinks would have been an appropriate award under the circumstances but rather decide whether the award represents an appropriate exercise of discretion by the fact finder. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Each award must be analyzed on a caseby-case basis to determine whether it is adequate under the particular facts and circumstances presented by the case under review. Id. It should be noted that reasonable people will often differ on what they feel is a reasonable award for general damages. An appellate court should only raise or lower a general damages award when the award, in either direction, is beyond what a reasonable fact finder could assess for the effects of this particular injury on this particular victim under these particular circumstances. Id. With these legal precepts in mind, we now turn to the evaluation of the general damage awards in the instant case.
The primary considerations in assessing damages are the severity and duration of the injured person's pain and suffering. In re Medical Review Panel Bilello, 621 So.2d 6, 9 (La.App. 4 Cir. 5/27/93), writ denied by 629 So.2d 1139. The defendants argue that all of Ms. Hoyt's and Ms. Coulonge's physical and neurological examinations were basically normal and that they merely received minor injuries. Further, defendants argue that even if this court finds that all of Ms. Hoyt's and Ms. Coulonge's injuries resulted from this accident, the awards are greatly disproportionate to similar injuries.
However, the court, being the fact finder, had the opportunity to hear the testimony and evidence presented. A reasonable fact finder could conclude that Ms. Hoyt and Ms. Coulonge sustained disabling injuries, having long-range implications. Given the great or vast discretion accorded to the fact finders' decision on damages, we do not find that the trial court was manifestly erroneous in awarding $150,000.00 to Ms. Hoyt and $100,000.00 to Ms. Coulonge, and we therefore find no merit in this assignment of error.
Accordingly, the judgment is reversed as to Ms. Amy Hoyt's award for $19,817.00 in past wages, and is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The Albach Company, Inc., stipulated that Mr. Alphonso was in the course and scope of his employment at the time of the accident.
[2] The Gray Insurance Company stipulated to insurance coverage of $1,000,000.00 combined, single limit insurance coverage.
[3] A W-2 form from the Piccadilly Cafeteria for 1997 showed that Ms. Hoyt's total earnings were $1,115evidence that Ms. Hoyt worked at Piccadilly for nine weeks sometime between 1996 and 1997.