779 So.2d 978 (2001)
In re Medical Review Panel Leona M. DAWES and Wiley I. Dawes
v.
Dr. J. Gregory KINNETT.
Leona M. Dawes and Wiley I. Dawes
v.
Dr. J. Gregory Kinnett.
Leona M. Dawes and Wiley I. Dawes
v.
Dr. Carlos A. Guanche.
Nos. 99-CA-3157 to 99-CA-3159.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2001.
*979 Fred L. Herman, John G. Munoz, New Orleans, LA, Counsel for Plaintiffs/Appellees.
John J. Hainkel, III, Angela M. Bowlin, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, Counsel for Intervenor/Appellant.
Court composed of Judge MURRAY, Judge BAGNERIS, and Judge TOBIAS.
TOBIAS, Judge.
In this medical malpractice suit, the Louisiana Patient's Compensation Fund (the "Fund") appeals from a trial court judgment rendered in favor of the plaintiffs, *980 Leona M. and Wiley I. Dawes ("Mr. and Mrs. Dawes").
In July 1992, Walter Brent, M.D., treated Mrs. Dawes, age 84 years, with injections and physical therapy for right shoulder pain. In December 1992, because her severe pain was not responding to the treatment, Dr. Brent referred Mrs. Dawes to J. Gregory Kinnett, M.D., an orthopedic surgeon. Dr. Kinnett diagnosed Mrs. Dawes as having impingement syndrome of the right shoulder joint, degenerative arthritis, loosening of the right shoulder joint, tendinitis of the rotator cuff with a probable tear, and a rupture of the long head biceps.
On 30 December 1992, Dr. Kinnett surgically repaired Mrs. Dawes's rotator cuff. Although she initially improved, the pain in her right shoulder and arm persisted. By the spring of 1993, the pain radiated from her shoulder down to her hand. In April 1993, Mrs. Dawes underwent a MRI, EMG, and nerve conduction study. The tests disclosed median nerve palsy of the right arm, mild carpal tunnel syndrome of the median nerve, and cervical disc disease. In late April 1993, Mrs. Dawes underwent cervical traction and steroid/antiinflammatory treatment at University Hospital in New Orleans. On 3 May 1993, Dr. Kinnett performed decompression surgery on the median nerve of the right wrist.
Following the 3 May 1993 surgery, Mrs. Dawes initially reported little pain and no numbness of her right hand, but her right shoulder pain became more intense.
On 23 August 1993, Dr. Kinnett performed a full right shoulder arthroplasty (replacement) on Mrs. Dawes at Touro Infirmary. During the operation while installing the prosthesis, Dr. Kinnett fractured Mrs. Dawes's right humerus. To repair the fracture, Dr. Kinnett placed four cerclage wires around the humerus to hold it in place. Dr. Kinnett noted in his records that Mrs. Dawes was in less pain following the surgery. However, Mr. Dawes testified that his wife remained in pain.
On 23 March 1994, Mrs. Dawes sought a second opinion from Carlos Guanche, M.D., an orthopedic surgeon. Following examination, Dr. Guanche informed Mrs. Dawes that the shoulder replacement had failed and that there was a fracture/nonunion of the right humerus. On 31 May 1994, he performed surgery to repair the failed shoulder replacement and the fractured right arm.
Dr. Guanche's 31 May 1994 operative notes indicated that Mrs. Dawes's axillary nerve had been partially transected by a previous operation and that a portion of her radial nerve was trapped within a cerclage wire. During the surgery, he took photographs to memorialize his observations. He confirmed the observations to Mrs. Dawes's attorney in a letter.
Following Dr. Guanche's surgery, Mrs. Dawes developed radial nerve palsy that resulted in "wrist drop." Thus, she can no longer extend her right hand at the wrist.
In an 11 January 1995 letter to Mrs. Dawes's attorney, Dr. Guanche contradicted his earlier letter and denied that axillary nerve damage existed and that cerclage wire entrapped the radial nerve. A 30 January 1995 EMG performed by John Olson, M.D., a neurologist, suggested combined axillary and radial nerve damage of the right arm.
As a result, Mr. and Mrs. Dawes filed medical malpractice complaints against both Drs. Kinnett and Guanche. They alleged Dr. Kinnett violated the informed consent law by failing to inform them of the possible complications that could arise from a total shoulder replacement and that he violated the applicable standard of care when he negligently damaged the nerves in Mrs. Dawes's right arm and shoulder. Specifically, they claimed that Dr. Kinnett transected the axillary nerve and entrapped the radial nerve with cerclage wire while trying to repair the fractured humerus. In addition, the plaintiffs *981 alleged that Dr. Kinnett negligently failed to diagnose and treat post operatively the fracture/non-union of Mrs. Dawes's right humerus. As to Dr. Guanche, the plaintiffs alleged that he negligently transected Mrs. Dawes's axillary nerve during surgery and attempted to conceal it. Alternatively, they alleged that Dr. Guanche performed an unnecessary surgery and damaged Mrs. Dawes's radial nerve during the procedure. The plaintiffs also claimed that Dr. Guanche failed to properly diagnose and treat Mrs. Dawes's condition. Mr. Dawes claimed a loss of consortium as a result of both physicians' actions.
The medical review panels found that neither Dr. Kinnett nor Dr. Guanche had breached the applicable standard of care and that Mrs. Dawes had been adequately informed of the risks of surgery. The Daweses subsequently filed suit.
Following a four day bench trial, the plaintiffs dismissed Dr. Guanche and reserved their rights against the State of Louisiana, the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, the LSU Medical Center, Health Care Services Division (collectively, the "State"), and Dr. Kinnett.
In lengthy reasons for judgment, the trial judge determined that the plaintiffs had rebutted the presumption that Mrs. Dawes had given her informed consent. The trial judge also found that Dr. Kinnett had transected Mrs. Dawes's axillary nerve, entrapped her radial nerve in cerclage wire, and further injured the radial nerve during the 23 August 1993 surgery. Dr. Kinnett's actions, the trial judge concluded, were negligent and deviated from the applicable standard of care. In addition, the trial judge found Dr. Kinnett breached the standard of care when he negligently failed to diagnose and treat the non-union of Mrs. Dawes's fractured humerus. The trial judge rejected plaintiffs' claims that Dr. Guanche deviated from the standard of care in his treatment of Mrs. Dawes.
On 28 May 1999, the trial judge rendered judgment in favor of Mrs. Dawes and against Dr. Kinnett for $400,000.00 in general damages and $43,290.13 in special damages in addition to legal interest and court costs. The judgment also awarded Mr. Dawes $25,000 for loss of consortium plus interests and court costs. On August 9, 1999, following a motion for new trial, the trial judge amended the judgment to limit the plaintiffs's award against Dr. Kinnett to $100,000.00 plus legal interest and court costs, and assessed the balance against the Fund.
From the judgment, as amended, Dr. Kinnett and the Fund suspensively appealed. While the appeal pended, Dr. Kinnett paid the plaintiffs $135,000.00 in partial satisfaction of the judgment and in return for a full dismissal of their claims against him. The plaintiffs, however, reserved their rights to proceed against the Fund for the excess. Dr. Kinnett's suspensive appeal was dismissed on 28 January 2000.
On appeal, the Fund asserts six assignments of error; four of the assigned errors specifically contest the trial judge's findings of negligence and fault on the part of Dr. Kinnett. In response, the plaintiffs argue that the Fund can appeal only the trial court's award of damages. They contend the Fund is precluded from appealing the issue of Dr. Kinnett's liability because Dr. Kinnett had paid $135,000.00 in satisfaction of the judgment, which constituted an admission and establishment of liability under La. R.S. 40:1299.44C(5). In reply, the Fund argues that the language of La. R.S. 40:1299.44C(5), which provides that the Court, in approving a settlement or determining the amount to be paid by the Fund, "shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars," applies only to pre-judgment settlements. The Fund contends that Dr. Kinnett's $135,000.00 payment to the plaintiffs was not a settlement but rather a payment *982 in partial satisfaction of the judgment, and, therefore, not an admission of liability.[1]
In support of their argument, the plaintiffs cite the case of Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365, where the Louisiana Supreme Court held that the "legislative intent of `liability' in Section 1299.44C(5) [of Title 40] was that the payment of $100,000 in settlement establishes proof of liability for the malpractice for damages of at least $100,000 resulting from the malpractice ..." 699 So.2d at 365. In Graham, the defendant doctor's insurer paid the plaintiff $100,000.00 in settlement of his claim before the medical review panel had convened. After the trial court approved the settlement, the plaintiff proceeded to trial against the Fund. In granting certiorari, the Supreme Court considered the extent of the plaintiff's burden of proving causation of the claimed damages in light of the $100,000.00 settlement and held that Graham had the burden of proving at trial against the Fund that the admitted malpractice caused damages in excess of $100,000.00.
Although Mr. and Mrs. Dawes urge this Court to hold that the provisions of La. R.S. 40:1299.44C(5) apply to both pretrial and post-trial settlements, after reviewing the statutory history and related jurisprudence, we find no basis to do so. We agree with the Fund that Dr. Kinnett's $135,000.00 payment in partial satisfaction of the judgment against him cannot be construed as a settlement within the meaning of La. R.S. 40:1299.44C(5). Therefore, the trial court's findings as to Dr. Kinnett's negligence and fault are reviewable in this appeal.
In its first assignment of error, the Fund argues that the trial court erred in finding that Dr. Kinnett failed to obtain Mrs. Dawes's informed consent. Specifically, the Fund contends that the plaintiffs failed to rebut the statutory presumption of valid consent where Mrs. Dawes failed to testify that Dr. Kinnett had not explained the material risks of surgery to her or that she would not have had the surgery had he done so.
Mr. and Mrs. Dawes claim that the consent form presented by Dr. Kinnett was a general form used for any type of surgery and was not designed for the orthopedic surgery that Mrs. Dawes was to have. In addition, they claim that the form used did not warn of the risks of axillary or radial nerve injury, loss of function of the right shoulder, arm and hand, fracture during surgery or the need of a second operation. According to the plaintiffs, Dr. Kinnett had never informed them that in Mrs. Dawes's case a total right shoulder arthroplasty had a high probability of failure because she lacked the requisite rotator cuff integrity and muscle strength. If they had known the procedure was likely to be unsuccessful, Mrs. Dawes would not have consented to the surgery, and, instead, could have been referred to a pain clinic.
La. R.S. 40:1299.40 establishes a presumption of valid consent where a written consent is signed. This presumption may be rebutted if the plaintiff establishes (1) the existence of a material risk which the physician must disclose, (2) the physician failed to inform the patient of a material risk, (3) the material risk was realized, *983 and (4) there is a causal connection between the failure to inform the patient of the risk and realization of the risk. Hondroulis v. Schuhmacher, 612 So.2d 859, 861 (La.App. 4 Cir.1992).
In claiming inadequate disclosure of risk information by a physician, the patient must establish prima facie the essential elements of the cause of action: that the undisclosed risk actually occurred and, had the risk been disclosed, the treatment would have been avoided. Cox v. Board of Administrators of Tulane Education Fund, 97-2350 (La.App. 4 Cir. 7/1/98), 716 So.2d 441, 445.
At trial, Dr. Kinnett testified that he orally warned the plaintiffs of the complications that could result from the surgery and explained the procedure and the material risks involved. He testified that the printed consent form tracked the language required by La. R.S. 40:1299.40 and that Mrs. Dawes had signed two other informed consent forms relating to two prior surgeries that he had performed on her. As to the consent form at issue, Dr. Kinnett explained that Mr. Dawes had guided his wife's hand when she signed the form and that he also signed it. Dr. Kinnett testified that both Mr. and Mrs. Dawes wanted her to undergo the surgery to alleviate her intense pain and, therefore, they cannot show a causal connection between the lack of informed consent and the damages. According to Dr. Kinnett none of his patients had ever rejected a proposed total shoulder arthroplasty solely by virtue of the disclosure of known material risks of the procedure. He noted that Mrs. Dawes had signed a consent form for Dr. Guanche that contained nearly every possible material risk and underwent surgery by him. Finally, Dr. Kinnett maintained that Charles J. Johnson, M.D., and Wilmot Ploger, M.D., both members of the medical review panel and orthopedic surgeons, testified that no breach of the standard of care had occurred.
The trial court held that Mr. and Mrs. Dawes rebutted the presumption that Mrs. Dawes gave her informed consent to the surgery. In reaching its conclusion, the trial court reasoned that La. R.S. 40:1299.40 required Dr. Kinnett to use a form that:
1) sets forth in general terms the nature and purpose of the procedure or course of procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures;
2) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and,
3) is signed by the patient for whom the procedure is to be performed.
The trial court found that Dr. Kinnett had a duty to disclose the risks of possible nerve damage, wrist drop, fracture, and loss of function of the shoulder and arm. Dr. Kinnett's testimony, the court concluded, was self-serving because the material risks were noted neither in the printed consent form nor in his office records. The trial court considered that both Mr. and Mrs. Dawes were elderly and hearing impaired. It also found that a material risk was realized, to-wit: Dr. Kinnett admitted that he fractured Mrs. Dawes's humerus during the surgical procedure.
The trial court accepted the testimony of Richard Fleming, M.D., plaintiffs's expert in orthopedic surgery, who testified that the surgery was unlikely to succeed because of Mrs. Dawes's age and lack of rotator cuff integrity and muscle strength. Dr. Fleming testified that contrary to the experiences of Drs. Johnson and Ploger, he had patients who had refused similar surgery when informed of the material risks. The trial court noted that at the time Mrs. Dawes signed Dr. Guanche's consent form she had been in pain for *984 several months and the surgical procedure was couched in terms of repair worka different surgery than that performed by Dr. Kinnett. Finally, the trial court accepted Mr. and Mrs. Dawes's own testimony that had they been told of the material risks, Mrs. Dawes would not have undergone the surgery.
An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). Here, the trial judge observed the witnesses, heard their testimony, and weighed the evidence before her. Reviewing the entire record, the trial judge's finding that Dr. Kinnett failed to properly inform Mrs. Dawes of the risks associated with the surgery is not clearly wrong.
The Fund argues in its second, third, and fourth assignments of error that the trial court erred in finding that Dr. Kinnett breached the standard of care of orthopedic surgeons by negligently severing Mrs. Dawes's axillary nerve, entrapping her radial nerve with cerclage wire, and failing to discover and treat post-operatively her fractured humerus. Concurrently, the Fund argues in the fifth assignment that the trial court erred in finding that Dr. Guanche had not injured Mrs. Dawes's radial nerve.
La. R.S. 9:2794 requires a plaintiff, in a medical malpractice action based on the negligence of an orthopedic surgeon licensed under La. R.S. 37:1261 et seq., to prove by a preponderance of the evidence the degree of care ordinarily practiced by orthopedic surgeons; that the defendant orthopedist either lacked this degree of knowledge or skill or failed to use reasonable care and diligence along with his best judgment in the application of that skill; and, that as a proximate result of the defendant orthopedist's lack of knowledge or skill or the failure to exercise the required degree of care, the plaintiff patient suffered injuries that would not otherwise have been incurred.
The trial court concluded that Dr. Kinnett's treatment fell below the standard of care of orthopedic surgeons when he entrapped the radial nerve in cerclage wire while attempting to repair Mrs. Dawes's fractured humerus and that other actions during the surgery resulted in additional injury to the nerve. The trial court reasoned that although no objective proof existed to prove that Dr. Kinnett injured Mrs. Dawes's axillary nerve, objective proof in such circumstances is rare. The court relied on Dr. Fleming's testimony that it would have been difficult to identify Mrs. Dawes's axillary nerve damage because she had extensive stiffness, sensory loss, and pain attributable to three surgeries. Dr. Ploger, too, admitted that the axillary nerve damage could have been masked by damage to the biceps muscle. In view of Dr. Guanche's operative notes and photographs, Mrs. Dawes's clinical condition before and after the 23 August 1993 surgery (she had no deficit to her hand and wrist before the surgery), and Dr. Olson's EMG study, the trial court concluded that the plaintiffs satisfied their burden of proof. Further, Dr. Kinnett himself acknowledged that entrapping the radial nerve in cerclage wire could be a deviation from the standard of care. The trial court also accepted Dr. Fleming's testimony that the cumulative effect of several events the fracture of the humerus, the use of cerclage wire to repair the fracture, and the progressive deformity resulting from the non-union of the fracture compromised Mrs. Dawes's radial nerve and was a deviation from the standard of care. These events, Dr. Fleming opined, led to the formation of scar tissue and additional injury to the radial nerve, necessitating subsequent surgery. The trial court further noted that, contrary to Dr. Kinnett's claim that the fracture was healing properly, the x-rays disclosed a malunion. Dr. Fleming opined that the physical therapy *985 prescribed by Dr. Kinnett contributed to the malunion, which caused the progressive deformity of the arm. Based on Dr. Fleming's testimony and the other evidence, the trial court concluded that Dr. Kinnett's failure to diagnose and treat the malunion was a deviation from the applicable standard of care.
As to Dr. Guanche, the trial court found that he had not deviated from the standard of care required of orthopedic surgeons. In reaching this conclusion, the court gave little weight to Dr. Guanche's renouncement of his earlier statement that Dr. Kinnett had transected Mrs. Dawes's axillary nerve. Nonetheless, it rejected the theory that Dr. Guanche transected the axillary nerve and attempted to cover it up or that he had performed unnecessary surgery and damaged the radial nerve. The trial court specifically validated Dr. Fleming's testimony that there was no evidence that Dr. Guanche transected or partially transected the axillary nerve and that the surgery performed by Dr. Guanche was necessary to repair the failed shoulder replacement and non-union of the fractured humerus.
Keeping in mind the standard for appellate review, after reviewing the evidence in the record, we find no error in the trial court's findings regarding the negligence and fault of Dr. Kinnett. Likewise, we find no error in its finding that the evidence was insufficient to prove that Dr. Guanche had deviated from the applicable standard of care.
Finally, in the sixth assignment of error, the Fund argues that the trial court's award of $400,000.00 in general damages was excessive. The Fund claims that the plaintiffs failed to introduce evidence to show that Mrs. Dawes had an inordinate increase in pain following the 23 August 1993 surgery or that the surgery severely diminished the function of her right arm.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The trial court considered the testimony of Linda Morgan, Mrs. Dawes's daughter, who acknowledged that prior to the surgery her mother had pain and experienced problems with her right arm but explained that she was still able to care for her family's needs. In addition, the trial court relied on Dr. Fleming's testimony that the medical records indicated that Mrs. Dawes had limited function of her right shoulder prior to the 23 August 1993 surgery. In justifying the award, the trial court reasoned that Mrs. Dawes was 84 years old at the time of her first surgery. Following the procedure, she spent ten days in the hospital, underwent intensive physical therapy, and her right arm remained in a sling. Besides experiencing constant, excruciating pain in her right arm and shoulder, Mrs. Dawes's arm is permanently deformed and hangs twisted as a result of the surgery. Because Mrs. Dawes is right-handed and no longer has use of her right arm, she is severely limited in her daily activities. The trial court emphasized that the plaintiff can no longer brush her hair, apply make-up, bathe herself, write, or cut food while eating.
Considering the severity of Mrs. Dawes's injury, we find the trial court did not abuse its vast discretion in its award of general damages.
For the foregoing reasons, the judgment of the trial court awarding Leona M. and Wiley I. Dawes $443,290.13 and $25,000.00, respectively, together with legal interest and costs, is affirmed. The full amount of the judgment (principal, interest and costs) *986 is assessed against the Louisiana Patient's Compensation Fund, subject to a credit of $135,000.00, the amount paid in partial satisfaction of the judgment by Dr. Kinnett.[2]
AFFIRMED.
MURRAY, J., concurs with written reasons.
MURRAY, Judge, concurs with written reasons.
I concur in the result reached by the majority for the following reasons. Citing La.Code Civ. Proc. art. 2163, the majority concludes that we cannot consider the peremptory exception filed by the Fund because it was not filed in this court prior to submission of the case for decision. See n. 1. Although the article contains this stipulation, at least one court has held that it can be overridden by the appellate court's authority to notice such an exception on its own motion. See Phillips v. State, Through Dept. of Transp. and Development, 400 So.2d 1091, 1093 (La.App. 1st Cir.1981), writ denied, 401 So.2d 1195 (La. 1981). In any case, consideration of the peremptory exception filed for the first time in the appellate court is discretionary. South Louisiana Contractors, Inc. v. Freeman, 393 So.2d 461, 463 (La.App. 3d Cir. 1981).
In the instant case, I would decline to consider the exception because the settlement documents on which it is based were not part of the original trial court record. Although we allowed the plaintiffs to supplement the record on appeal with the "Receipt and Release" evidencing the dismissal of Dr. Kinnett, we are not thereby obligated to consider the exception based upon this information. Because I believe the language in article 2163 stating that the appellate court may consider such an exception "if proof of the ground of the exception appears of record" properly refers to the record originally before the trial court, to which our review is generally limited, I concur in the majority's refusal to consider the exception in this instance.
NOTES
[1] Following oral arguments in this case, we issued an order on 16 November 2000 to allow the plaintiffs to supplement the record with the "Receipt and Release" evidencing Dr. Kinnett's $135,000.00 payment to the plaintiffs and the dismissal of their claims against him. In response, on 22 November 2000, the Fund filed a peremptory exception of no cause of action or, alternatively, a motion to dismiss claim for excess damages, arguing that if Dr. Kinnett's payment to the plaintiffs is a settlement within La. R.S. 40:1299.44C(5), then the plaintiffs have not complied with the notice provisions under the statute in settling with the primary health care provider and, therefore, cannot recover excess damages from the fund. However, pursuant to La.Code Civ. Proc. art. 2163, the Fund's peremptory exception was untimely because it was not filed in this Court prior to submission of the case for a decision.
[2] Technically, the Fund is entitled to a credit of $100,000.00 plus legal interest from the date of demand upon the physicians through the date of payment of $135,000.00. This total credit may not be less than $135,000.00. That is, if the $100,000.00 plus legal interest as indicated herein is greater than $135,000.00, the Fund is entitled to the larger credit.