149 So.2d 648 (1963)
The NATIONAL CO., Inc., d/b/a The National Roofing and Siding Co.
v.
Fano J. NAVARRO and Anna Mae Navarro.
No. 925.
Court of Appeal of Louisiana, Fourth Circuit.
February 4, 1963.
*649 Reuter, Reuter & Schott, Patrick M. Schott, New Orleans, for plaintiff and appellant.
Ivor A. Trapolin, New Orleans, for defendants and third party petitioners, appellees.
Simon & Wicker, Lawrence D. Wiedemann, New Orleans, for third party defendants, appellees.
Before REGAN, SAMUEL and CHASEZ, JJ.
REGAN, Judge.
Plaintiff, The National Company, Inc., conducting its business under the trade name of The National Roofing and Siding Company, instituted this suit against the defendants, Fano J. and Anna Mae Navarro, endeavoring to recover the sum of $1,061.40, representing liquidated damages and expenses incurred by plaintiff as a result of defendants' alleged breach of a contract which involved the application of siding to their residence in Nashville Avenue in the City of New Orleans.
The defendants answered and asserted that the document sued on was not a contract, but was merely a "proposal", which plaintiff's agents had informed them could be withdrawn at any time by defendants *650 prior to commencement of the work. In the alternative, they insisted that if the document is construed to be an offer, then it was withdrawn before the plaintiff accepted; therefore, there was no contract.
Secondly, in the alternative, the defendants contend that the offer never ripened into a contract since plaintiff failed to procure a loan for defendants to finance the work, which, under the terms of the document, it was required to do.
Then, assuming the position of plaintiffs in reconvention, they maintain that the contractor was indebted to them for $100, the amount deposited when the offer was signed.
In addition to the foregoing pleadings, the defendants instituted a third party action against the plaintiff's salesmen, Milton J. Loeb and W. M. Amann, asserting that were they cast in judgment, then the third party defendants were liable for the amount thereof, since they misrepresented to the Navarros that the contract or offer was not binding and could be cancelled at any time prior to the commencement of the work.
The third party defendants answer consisted of a general denial and in addition thereto it requested that this complaint be dismissed.
From a judgment in favor of the defendants dismissing plaintiff's suit, and awarding defendants the amount of $100 prayed for in the reconventional demand and also dismissing the third party action, the plaintiff has prosecuted this appeal.
The record reveals that at 7 p. m. on October 18, 1961, the defendants signed a document wherein they offered to pay plaintiff $3,488.00 to apply aluminum siding to their residence and deposited $100 on account thereof. Prior to the signing thereof, Milton Loeb, one of plaintiff's salesmen, had visited the defendants at their residence on two previous occasions to sell the job.
When the instrument was signed, there were six persons present, the defendants, their mother, their aunt and plaintiff's two salesmen, Loeb and Amann. The defendants and their relatives all testified, over the objection of counsel for the plaintiffs, that one of plaintiff's agents assured them that the contract was not binding, and it could be cancelled at any time prior to commencement of performance. However, both salesmen deny that any such assurance was given.
The offer, submitted on a form prepared by the plaintiff contractor, provided in part:
"This contract is binding, subject only to acceptance by an executive of the NATIONAL ROOFING & SIDING CO., who reserves the right to reject it without liability on its part."
The following day, Anna Mae Navarro testified that her brother was informed that the First Homestead would not loan the full amount which was required to pay for the renovation. This fact is disputed by plaintiff's representative, who testified that the First Homestead had approved the loan. In passing, it is of interest to merely note that neither plaintiff nor defendants adduced proof to support their respective contentions concerning the financing, when proof thereof was readily available to either.
In any event, at 11 a. m. on October 19th, Miss Navarro telephoned the plaintiff's salesman, Loeb, to inform him they had changed their minds and desired to cancel the "contract". He was not in the office when she called so she left a message with one of plaintiff's employees to the effect that the offer was being withdrawn. Loeb obviously received the message for he returned the call at 2 p. m. Miss Navarro repeated that the offer was being withdrawn; however, Loeb advised her she could not cancel since the materials were on delivery to her home and the contract had been accepted.
At 4 p. m. that same day, a small truck containing a few materials for use in application of the siding arrived at the defendants' home, and Miss Navarro refused delivery thereof.
*651 The following day, October 20th, the defendants received a letter from plaintiff informing them that the offer or contract had been accepted. This letter was postmarked 7 p. m., October 19th, which was eight hours after Miss Navarro initially notified defendant that she was withdrawing the offer.
Predicated on the foregoing evidence, the trial judge reasoned that the offer never materialized into a contract because the defendants revoked their offer before the plaintiff accepted it.
Counsel for plaintiff contends that the trial court erred in concluding as a matter of law that the defendants had a right to revoke their offer.
The general rule relating to offer and acceptance is stated in LSA-C.C. Art. 1800, which reads:
"The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract."
While counsel for plaintiff recognizes the general rule, he insists that the offer submitted by the defendants was irrevocable until the offeree was afforded a reasonable time to accept, and points to the rationale of LSA-C.C. Art. 1809 in support thereof, which reads:
"The obligation of a contract not being complete, until the acceptance, or in cases where it is implied by law, until the circumstances, which raise such implication, are known to the party proposing; he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination. (Emphasis added.)
This article obviously places a limitation upon the general rule that offers may be revoked any time before they are accepted, and is applicable where the offeror has expressly stated an intention to make the offer irrevocable within a stipulated period of time or where the offer is of such a nature that from its very terminology the implication is present that the offeror intended to make it irrevocable for a reasonable period of time, within which it would be necessary for the offeree to signify his acceptance.
Plaintiff argues that since it was incumbent upon it to arrange for financing the work by obtaining a loan for the defendants, the offer was necessarily irrevocable until it had the opportunity to negotiate such a loan. He points out that the defendants attempted to cancel before a reasonable time elapsed within which to arrange financing.
To support his argument he relies upon the rationale emanating from Ever-Tite Roofing Corp. v. Green.[1] In that case, the defendant submitted an offer to have the roof on his home replaced. This offer contained a provision to the effect that either notification by the plaintiff or the commencement of the job would constitute an acceptance. Several days after the offer was submitted, the plaintiff delivered the materials to the job preparatory to commencing performance, and discovered that the defendants had employed another contractor to perform the work.
In the Roofing case, the defendant at no time withdrew his offer before the offeree accepted by tendering performance in conformity with the very terms of the agreement; therefore, there was a meeting of the minds when the materials were delivered *652 and defendant's refusal of performance constituted a breach of the contract.
In discussing whether the offeree had accepted timely the court stated:
"Therefore, since the contract did not specify the time within which it was to be accepted or within which the work was to have been commenced, a reasonable time must be allowed therefor in accordance with the facts and circumstances and the evident intention of the parties. A reasonable time is contemplated where no time is expressed. What is a reasonable time depends more or less upon the circumstances surrounding each particular case. The delays to process defendants' application (which involved obtaining financing) were not unusual. * * *" (Parenthetical material added.)
Plaintiff argues that the ratio decidendi of this case is to the effect that when an offer to perform work, which is contingent upon arranging a loan to pay for the job, is submitted to the offeree, an implication arises that the offeror intended to make his offer irrevocable until the offeree has had a reasonable time within which to negotiate a loan for the offeror.
We find no merit in this contention. A case is authority for only what it actually decides, therefore we think the case holds that an offer which has not been revoked is not revoked by implication when it is accepted within a reasonable time. The above quoted discussion was included in the opinion to counter the argument that the offer had been impliedly revoked since it was not timely accepted, because the court quoted and underlined LSA-C.C. Art. 1804, as follows:
"Art. 1804. The acceptance needs [need] not be made by the same act, or in point of time, immediately after the proposition; if made at any time before the person who offers or promises has changed his mind, or may reasonably be presumed to have done so, it is sufficient. * * *" (Emphasis supplied.)
Thus the court refused to supply an implication of revocation when the offer contemplated arranging financing and the arrangement was completed within a week.
We are of the opinion that the matter now before us is not controlled by the rationale of LSA-C.C. Art. 1809 since we do not think that the necessity for procuring financing is a circumstance from which we can supply the implication that the offeror intended to make his offer irrevocable for any period of time before acceptance.
Article 1809 initially appears in the Civil Code of 1825 as Article 1803, and the language was not changed when it was incorporated in the Revised Civil Code of 1870. The article provoked our curiosity, and it was of interest to learn that it has no counterpart in the Code of 1808 or the Code Napoleon. Therefore, the redactors of the Code of 1825 were apparently influenced by Toullier's commentaries. In 6 Toullier, Book 3, Title III, Note 30, the French commentator, after discussing the general principles of offer and acceptance states that there is one case where the offer is irrevocable before the acceptance, which is when the one who had made the offer has set a determined time for the acceptance, either expressly or tacitly.
Toullier cites the following example of the offer which tacitly is irrevocable for a reasonable period:
"For example, in consenting to contract with titles by the agency of third parties, who never had the mandate, I am tacitly obliged to wait for the time suitable or sufficient for ratification. I am engaged conditionally. The contract never existed if T does not ratify. If he ratifies, the ratification goes back to the date of contract, *653 the same as the contract accomplishes a retroactive effect to the day on which the engagement has been contracted. * * * This is why the laws say that ratifications has a retroactive effect. * * *
"But in what time should T ratify in order to prevent a revocation? As soon as he would have knowledge of the contract."
Applying this example to the instant case, an executive of plaintiff who was authorized to accept the offer was apprised thereof but had not accepted before the defendants revoked. Therefore, the revocation was timely.
A more modern version of the above example might exist when a custom prevails in the building trade to the effect that a subcontractor's bid to a general contractor, in the absence of a provision to the contrary, may be considered irrevocable after it has been used in preparation of the general contractor's bid to the owner, and has been accepted by the owner prior to the attempted revocation by the subcontractor.
The fact that financing was necessary before the work would be performed does not raise the implication that the offer was irrevocable until the offeree had time to procure financing. Had the offer been timely accepted and ripened into a contract, then the ability to procure financing would merely operate as a suspensive condition to suspend performance until the loan was procured, or negate the contract if financing was not available.
Since the plaintiff failed to establish that the offeror impliedly intended to make the offer irrevocable until the defendant was afforded a reasonable opportunity to accept, we are of the opinion that, in conformity with the provision of Art. 1800, the offeror was entitled to withdraw his offer at any time before it was accepted, and the record conclusively establishes that it was withdrawn timely.
Plaintiff finally insists that the trial court erred in awarding $100 to the defendant emanating from the recoventional demand. He correctly points out that the Code of Civil Procedure classifies the reconventional demand as an incidental demand, and this requires an answer. Plaintiff herein did not file an answer to the reconventional demand and defendants in reconvention did not enter a preliminary default on this demand. Nonetheless, the trial court rendered judgment.
It should be observed in this case that the plaintiff went to trial and did not object to the fixing of the case for trial without answer having been filed. In addition, there can be no dispute that if the defendants withdrew their offer timely and there was no contract, then they were entitled to the return of the deposit. We do not think that the plaintiff or defendant-in-reconvention was prejudiced by not filing an answer since the issues that could be raised therein were thoroughly pleaded and tried in conjunction with the principal demand.
Under these circumstances, we think the trial judge properly rendered judgment on the reconventional demand and was authorized to do so under LSA-C.C.P. Art. 862, which provides:
"Except as provided in Article 1703 (concerning judgment by default), a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." (Parenthetical material added.)
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed
NOTES
[1] La.App., 83 So.2d 449.