662 So.2d 125 (1995)
Gail R. MASTERS
v.
The CITY OF NEW ORLEANS.
No. 94-CA-2349.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Wiedemann & Wiedemann, John H. Denenea, Jr., New Orleans, for Appellee, Masters.
Borrello, Huber & Dubuclet, Kevin T. Phayer, Metairie, for Appellee, Liberty Mutual Insurance Co.
*126 Avis Marie Russell, City Attorney, Philip C. Ciaccio, Jr., Chief Deputy City Attorney, Victor M. Ortiz, Assistant City Attorney, New Orleans, for Appellant, City of New Orleans.
Before BARRY, JONES and LANDRIEU, JJ.
BARRY, Judge.
The City of New Orleans appeals Gail Masters' damage award for injuries sustained in an automobile accident. Masters sued the City alleging that on December 23, 1986 a police car turned left onto Allan St. from the right lane of North Miro St. and struck her vehicle in the left lane. She added as a defendant her uninsured motorist carrier, Liberty Mutual Insurance Company, which filed a cross claim/intervention. It was stipulated that Liberty Mutual was entitled to reimbursement by priority for $23,884.42 paid to Masters.
The trial court awarded Masters total damages of $189,426.46: medical expenses, $14,426.46; general damages, $100,000; loss of income and earning capacity, $85,000.[1] The court awarded Liberty Mutual $23,884.42 on its intervention. The only issue on appeal is quantum.
The trial court has great discretion in the assessment of damages. An appellate court should increase or decrease an award only when the amount is beyond that which a reasonable trier of fact could assess for the effects of the particular injury upon the particular plaintiff under the circumstances of the case. La.C.C. art. 1999; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
General damages do not have a common denominator and must be determined on a case by case basis. Bernard v. Royal Insurance Company, 586 So.2d 607 (La.App. 4th Cir.1991), writ denied, 589 So.2d 1058 (La.1991). General damages involve physical pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment and other factors that affect the victim's life. Factors to be considered to assess quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173 (La.App. 4th Cir. 1991), writ denied, 594 So.2d 1315 (La.1992).
Loss of earning capacity is not the same as lost wages. Earning capacity refers to a person's potential. A victim is being compensated for her lost ability to earn in the future. Finnie v. Vallee, 620 So.2d 897 (La.App. 4th Cir.1993), writ denied, 625 So.2d 1040 (La.1993). The trial court should consider plaintiff's physical condition before the accident, plaintiff's work record, amount earned in previous years and the probability that except for the injury the plaintiff would have earned similar wages the rest of her life. Perez v. State through Department of Transportation and Development, 578 So.2d 1199 (La.App. 4th Cir.1991), writ denied, 581 So.2d 706 (La.1991).
Gail Masters, a 54 year-old woman at the time of trial in 1994, worked as a clerical specialist for a traffic court judge in 1986. She prepared the docket and checked attachments. She also worked part-time at the Fairgrounds. Although she suffered from hidradenitis suppurativa (from 1978) and diverticulitis (from 1979), she never missed work for extended periods of time or filed for disability prior to the December, 1986 auto accident. According to her treating physicians, Dr. Howes, a plastic surgeon, and Dr. Bergeaux, an internist, those prior conditions were manageable. Masters also handled serious domestic problems (including an abusive husband from whom she obtained a legal separation in November, 1986) and continued to work until the collision.
Drs. Elmorshidy and Diaz, Masters' treating orthopedic surgeons from January, 1987 to September, 1988, testified that Masters suffered soft tissue injuries as a result of the collision. She had a cervical and lumbar strain and experienced muscle spasms and pain in the neck and upper back and arm. She was also in a rear end collision in January, 1987 the day before Dr. Elmorshidy removed a benign tumor in her back (not related to the accident). Masters testified *127 that her condition was not worsened and she made no claim for personal injuries. Weeks after the surgery Masters tried to go back to work, but was unable to do her job at traffic court. Her last day was in February or March, 1987 and she was approved for disability pension benefits in July, 1987 and remains disabled. She was also compelled to give up her part-time job. However, she did not qualify as disabled under the Social Security's criterion. She had a real estate license, prepared tax returns, and took a paralegal course while recovering.
Pursuant to doctors' instructions Masters took medication, was hospitalized nine days in traction and underwent physical therapy for three weeks. She continued to have spasm and pain. By September, 1988 Masters stopped seeing Dr. Diaz, whose treatment consisted of prescribing medication (which Dr. Bergeaux could prescribe), but she was never discharged. She continued to see Drs. Howes and Bergeaux. Because of her continued pain Masters saw Dr. McLachlan in May and June, 1988 and Dr. Richardson, a Tulane Medical Center neurologist, in JulyDecember, 1991.
About six months after the collision on June 18, 1987 Masters was in continuing pain, became depressed and went to see a psychologist, Dr. Beverly Howze. According to the doctor, the collision was a turning point in Masters' life in terms of physical and psychological health. Masters was very depressed. She had chronic pain in her neck, back and shoulders and had to give up her valued job at traffic court. Dr. Howze collaborated with psychiatrist Dr. Roniger, who prescribed an anti-depressant that was effective. Masters improved, but still suffered panic attacks. She saw Dr. Howze up until October, 1987 and continued to see Dr. Roniger through April, 1989. Drs. Howze and Roniger linked Masters' depression to the auto accident. Prior to that Masters managed to work and function in spite of her medical problems. Dr. Roniger's diagnosis was adjustment reaction with a significant depressed mood related to the collision.
Dr. Ancira, the City's psychiatrist who reviewed medical records and met with Masters for one hour on May 27, 1994, concluded that she generally was in a stable state but noted that her physical symptoms (including the neck and back pain) would probably make it difficult for her to return to work. He agreed with Dr. Roniger's diagnosis of adjustment reaction, but felt that it was secondary to all of Masters' physical and psychological problems.
In reasons for judgment the trial court stated that Masters suffered a soft tissue injury that lingered for an extended period of time. The injury contributed to her other physical problems and probably precipitated her disability retirement. The court weighed the testimony of Drs. Howze, Roniger and Ancira and concluded that Masters' depression was caused by her overall physical condition and a percentage could not be allocated to any one cause. The trial court noted her ability to do many types of work even though she was classified as disabled by the City. The court declared that Masters had a slightly diminished earning capacity, but could earn a living.
The City argues that the court's $100,000 award for general damages is excessive. That amount is not beyond a figure that a reasonable trier of fact could assess for the continuing physical pain of Masters' soft tissue injury and the resultant psychological problems and disability.
The City argues that the award for lost wages and loss of earning capacity should be reduced. Dr. Wolfson, forensic economist, used Masters' earnings of $19,920 in 1984, $18,389 in 1985, and $12,157 in 1986 to calculate lost wages of $155,564 up until the time of trial in June, 1994 and loss of wages in the future (for 8 years based on the anticipated average retirement age for a woman with Masters' date of birth) at a present value of $170,424 if Masters could not work or $107,235 if she could work at minimum wage. The trial court did not abuse its discretion by awarding $85,000.
Both sides agree that there was a mathematical error in the $189,426.46 total of the awards of $85,000, $100,000 and $14,426.46. The judgment is amended to reflect the correct *128 total of $199,426.46. The judgment as amended is affirmed.
AFFIRMED AS AMENDED.
NOTES
[1] The parties agree that the awards total $199,426.46.