789 So.2d 608 (2001)
Nancy H. AUTIN-GERMANY
v.
Sammy Clark GERMANY.
No. 00-CA-1924.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*609 Robert C. Lowe, David M. Prados, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, for defendant-appellant.
Wiley J. Beevers, Raylyn R. Beevers, Bernard M. Plaia, Gretna, LA, for plaintiff-appellee.
Court composed of Judges ROTHSCHILD, SCHOTT, Pro Tempore, and CIACCIO, Pro Tempore.
PATRICK M. SCHOTT, Judge, Pro Tempore.
Sammy Clark Germany, defendant, appealed from a judgment in favor of his divorced wife, Nancy Autin Germany, plaintiff, recognizing and enforcing a purported July 1998 agreement to make a property settlement. The issues are whether a valid contract was confected at that time from an exchange of letters between the attorneys for the parties or whether the parties are bound by a stipulation of a settlement made in open court in October 1998.
The parties were married on October 29, 1994, and agreed to a separate property regime. They both filed petitions for divorce, and, on December 1, 1998, they were divorced. After they filed their respective petitions, they began negotiating a settlement of their property. On July 2, 1998, defendant's counsel sent a letter containing a settlement proposal to plaintiff's counsel. On July 8, 1998, plaintiff's counsel in the letter stated that the proposal was accepted, but she made changes in the terms of defendant's proposal. The parties never acted on these letters.
Plaintiff's counsel resigned September 17, 1998, and, on September 25, 1998, the defendant filed a Motion to Reset and to Compel Responses to Discovery, wherein he requested that his rules previously set for June 29, 1998, and continued, be reset, and that responses to his discovery requests be compelled. The trial judge set the motions for hearing on October 15, *610 1998. On October 14, 1998, the parties discussed the terms of a final property settlement on the telephone, plaintiff typed the terms of the proposal as they discussed them, and she then faxed to defendant a document twice declaring, at the top of the document and at the bottom, that this was the final settlement. The word "final" at the bottom of the page is in capital letters and is followed by an exclamation point.
On October 15, 1998, the parties appeared on the Motion to Reset and Compel, and before the proceedings began, the parties discussed revising several terms, and reached a settlement. When the hearing began, defense counsel immediately stated that he wished to put a stipulation on the record because the parties had reached a settlement of the entire property partition. With the trial judge's permission, he explained in open court that the parties were originally there on two motions, but that, since they reached a settlement, they simply wished to dictate that settlement into the record so that it would be considered a transaction or compromise and the parties would be bound by its terms. The stipulation resembled the language from the final settlement that plaintiff had typed the day before, but it was more specific. At the conclusion of the stipulation, the trial judge asked the parties if they heard the terms of the stipulation and consent agreement, and each replied, "Yes, sir." He then asked them if they both agreed to it, and each replied again, "Yes, sir." The basic terms of the agreement, as read in open court, are as follows: Plaintiff was to deliver to defendant, that day, specific items of jewelry. Defendant was to deliver $9,000.00 cash to plaintiff for her interest in their Volvo in exchange for her signing over the title and other necessary documents to transfer full ownership to defendant, that day. Defendant, however, permitted plaintiff to use the vehicle for thirty days. Plaintiff was obligated to list their home for sale immediately and pay defendant $32,500.00 at the time of sale, or within one year from October 15, 1998, or whichever came first. If she paid him the money before the sale or before nine months elapsed, she would be entitled to a one percent reduction in the $32,500.00. Plaintiff also was required to sign a promissory note immediately, payable on demand within one year or upon the sale of the house. The note was to be secured by a second mortgage on the house.[1]
Immediately after the hearing, the parties went together to the bank for the defendant to get a $9,000.00 cashier's check, which he immediately gave to plaintiff, as prescribed by the settlement. The plaintiff returned to defendant the jewelry specified in the stipulation. Twenty days later, she delivered to defendant the furniture, vehicle, and the vehicle's title, registration, keys and remote locking device. She asked defendant to sign a receipt indicating that "The Volvo was returned 10 days ahead of the due date." The due date referenced was obviously the 30-day due date in the stipulation. Further, she wrote to defendant's counsel on November 11, 1998, requesting the judgment, promissory note and mortgage, and on November 13, 1998, wrote to him stating that she had *611 requested a transcript to ensure the judgment brought to the trial judge would be consistent with the terms of the stipulation. On December 15, 1998, she responded to defense counsel's letter of the same date requesting return of all Volvo accoutrements by stating that her actions were being done "in fulfillment of our agreement."
The plaintiff refused to sign the judgment reflecting the stipulation, wherein her duties relative to the promissory note and mortgage were outlined. Defendant then filed a Rule to Compel Signing of Judgment, Promissory Note, and Mortgage, and Rule for Contempt on December 9, 1998. On January 20, 1999, present counsel for plaintiff became her counsel of record. On May 13, 1999, defendant filed an amended rule seeking to enforce the stipulation of October 15, 1998. After numerous continuances and skirmishes over discovery, defendant, on April 28, 2000, filed a motion to reset his rule, and it was scheduled for a hearing on May 30, 2000. On May 3, 2000, plaintiff filed a Rule to Enforce Transaction or Compromise Agreement, alleging for the first time that the parties' exchange of letters in July 1998 effected a transaction or compromise.
The conflicting rules were tried on July 19, 2000. The judge rendered judgment for defendant with reasons on August 29, 2000 in which he concluded that the parties entered into a transaction and compromise when their lawyers exchanged letters in July. The trial judge reasoned that plaintiff, who was unrepresented at the October 15, 1998 hearing, honestly believed that, at the hearing, they were completing the agreement in the July letters, and further, that the July agreement was valid and enforceable. The trial judge found that the July agreement "primes" the October agreement because, in July, the parties formed a valid contract, and so, the property dispute ended because plaintiff was unrepresented and under the influence of medication at the October 15, 1998 hearing.
We first consider whether the parties entered into a compromise when their lawyers exchanged letters in July 1998. A compromise is an agreement or contract between two or more persons. LSA-C.C. arts. 3071, 1906. A contract is formed by the consent of the parties through offer and acceptance. LSA-C.C. art.1927. An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer. LSA-C.C. art.1943. Unless a counteroffer is accepted, there is no contract. In the Reasons for Judgment, the trial judge states that in plaintiff's counsel's letter of July 8, 1998, "No additional terms or suspensive conditions were added by Ms. Madere, nor was anything else done or said that could remotely be interpreted as a counter-offer." The judge also said, "The acceptance was reasonable under the terms of the offer and made without change to said offer." These findings that the offer and purported acceptance were the same are manifestly erroneous, and a reading of the two letters compels this conclusion.
The initial letter, dated July 2, 1998, from defendant's counsel to plaintiff's then counsel, proposed seven terms and asked her to advise whether her client agreed to the terms. The two most relevant terms are as follows:
(1) Ms. Germany shall immediately transfer full ownership of the Volvo automobile to GEO Resources, Inc. Mr. Germany will provide Ms. Germany, if she desires, use of another company vehicle, with full insurance coverage. She may have use of that vehicle until the sum provided below is paid.

*612 (2) Mr. Germany will pay Ms. Germany $10,500 within thirty days. (This vehicle will be returned on date of payment, in appropriate condition.)
In response to this letter, plaintiff's counsel mailed and faxed a letter in which she apparently accepted defendant's offer but she stated, "She will sign title of the car over to Sammy simultaneously with the signing of the documents provided that the monies due to her will be delivered to her at the same time." Because his proposal provided that he give her the money within 30 days, not immediately, and that the title to the car must be transferred to him immediately, not when he delivered the money, the terms of the offer and acceptance differed substantially. As such, she made a counteroffer that was never accepted. Consequently, there was no agreement and a property settlement was not reached in July 1998. This explains why neither party complied with or sought to enforce the terms allegedly agreed to in July or to secure a judgment to enforce the terms in the July letters until almost two years later when plaintiff suggested, for the first time, that the matter had been settled in July.
Thus, we have concluded that the trial judge committed manifest error in finding that plaintiff's letter of July 1998 made no changes in the terms of defendant's offer, and the court thereby fell into legal error in failing to recognize plaintiff's letter as a counteroffer that was not accepted by defendant.
We next turn to the question of whether the stipulation entered into by the parties in open court on October 15, 1998 was binding and enforceable.
A transaction or compromise is an agreement between parties seeking an end to a lawsuit, which must either be reduced in writing or recited in open court and capable of being transcribed from the record of the proceedings. LSA-C.C. art. 3071. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form. LSA-C.C. art. 3071. Transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected. LSA-C.C. art. 3078.
The terms of the stipulation were very similar to those outlined by plaintiff in the letter she wrote the day before. Both parties indicated that they heard the agreement read in open court and agreed to its terms. Though in her testimony given 21 months later, she said she had asked defendant the morning of the hearing for time to obtain counsel, she did not indicate this to the judge, nor did she give any indication that she did not understand what the defendant's counsel recited. Neither did she convey to the judge at the October 1998 hearing or within a reasonable time thereafter that her prescription medication prevented her from agreeing on the property settlement. She never made this allegation in any pleading. The very first time she said she was under the influence of prescription medication at the October 1998 hearing was in her testimony at the hearing on July 19, 2000. Furthermore, immediately after she made the stipulation on October 15, 1998, she went with the defendant to his bank to get the $9,000.00 provided in the stipulation, just read in court, and she surrendered the jewelry also as outlined in the stipulation. In addition, she complied with other terms of the stipulation pertaining to the car and furniture, even noting that she was delivering the car before the deadline specified in the agreement. About a month after *613 the stipulation was read in open court, she requested the proposed judgment and stated that she had requested the transcript to make sure that the terms of the judgment did not vary from what was read in open court. It is also interesting that plaintiff never indicated to defendant that he actually owed her $10,500.00, the amount stipulated in the July proposal, nor did she argue with him over giving him furniture, which was apparently absent from the July proposal but present in the October agreement. All of this belies her claims that she entered into the stipulation under duress or under the influence of medication.
Not only does the party seeking to nullify a settlement agreement bear the burden of proof but the law strongly favors compromise agreements between parties and courts will not invalidate such settlements absent a strong showing that they violate good morals or the public interest because of error, bad faith, or fraud. Hoover v. Boucvalt, 99-0867 (La.App. 4 Cir. 11/24/99), 747 So.2d 1227, 1231, writ denied, 99-3610 (La.2/18/00), 754 So.2d 969. Applying the law to the facts of this case, we readily conclude that the October 15, 1998 stipulation was a valid transaction or compromise.
The record clearly shows that plaintiff is an intelligent person. She has a high school education and was employed as a secretary for an engineering firm. The letters she composed on her computer demonstrate that she knew exactly what she was doing when she drafted the final settlement proposal on the day before this was elevated to the formality of a stipulation and when she sent letters to defendant and his attorney as she carried out the terms of the stipulation. None of this is consistent with her late-blooming claim that she was under the influence of medication when she made the stipulation.
Finally, she testified, again for the first time at the end of the hearing in July 2000, that at the very time the trial judge was asking her in October 1998 whether she heard the stipulation and whether she agreed to it that she "was standing there very upset, crying, just going along with." She said, on direct examination by her counsel:
... all I recall was standing there shaking and crying and David [defendant's counsel] was reading stuff to the court and I had my head down, and I just, you know, shook my head "yes."
Then, on cross-examination when asked whether she heard the stipulation and agreed to it, she said:
My testimony is yes, I stood there. Yes, I was on Medication. Yes, I was crying. Yes, I was upset. Whoever was in this courtroom could see that.
The transcript of the hearing on October 15, 1998 does not support this testimony. Surely, if plaintiff had been so obviously distraught and upset as she said in July 2000, the trial court would not have accepted her stipulation. This uncorroborated testimony is so manifestly exaggerated and unreliable that it hardly supports the conclusion that she was incompetent or incapable of making the stipulation.
Accordingly, the judgment appealed from is reversed and set aside. Plaintiff's rule to enforce the purported July 1998 settlement is dismissed. There is judgment in favor of defendant, Sammy Clark Germany, and against plaintiff, Nancy H. Autin-Germany, recognizing and enforcing the settlement made by stipulation on October 15, 1998. All costs of these proceedings are assessed against plaintiff, Autin-Germany. The case is remanded to the trial court for enforcement and execution of this judgment.
REVERSED AND REMANDED.
NOTES
[1] The terms of the typed settlement, dated October 14, 1998, differed in the following ways relevant here from the terms of the transaction or compromise read in court: (1) the jewelry was not individualized; (2) there was no delivery date specified for the jewelry; (3) there was no mention of the transfer of the title and accoutrements of the car; (4) the time specified for her use of the vehicle was 30-45 days; and (5) there was no mention that Ms. Autin-Germany had to immediately list the house for sale or that she had to sign a promissory note, payable within one year and secured by a second mortgage on the home.