830 So.2d 1013 (2002)
Clifton G. RICHARDSON
v.
Alvaro J. O'BYRNE, M.D., The O'Byrne Eye Clinic, A.P.M., St. Paul Fire and Marine Insurance Company, Suzette S. Killeen, M.D., and Louisiana Medical Mutual Insurance Company.
No. 2000-CA-2202, 2001-CA-1697, 2002-CA-0753.
Court of Appeal of Louisiana, Fourth Circuit.
October 16, 2002.
Writ Denied January 24, 2003.
*1015 Charles D. Elliott, Faircloth & Davidson, L.L.C., Alexandria, LA, for Clifton G. Richardson.
*1016 Rodi W. Culotta, Jacqueline Hunt Andry, Mang, Batiza, Gaudin, Godofsky & Penzato, Metairie, LA, for Suzette S. Killeen, M.D. and Louisiana Medical Mutual Ins. Co.
Jacqueline G. Griffith, Lydia Habliston Toso, Glen Patrick McGrath, Charles O. Taylor, Griffith Batard and Taylor, New Orleans, LA, for Louisiana Patients' Compensation Fund and Oversight Board & Suzette S. Killeen, M.D.
(Court composed of Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III, Judge TERRI F. LOVE).
STEVEN R. PLOTKIN, Judge.
The pivotal issue in the instant appeal is whether a settlement agreement signed both by plaintiff, Clifton G. Richardson, and by a representative of the intervenor, the Louisiana Patients' Compensation Fund ("LPCF"), that was expressly made "subject to the approval of the [LPCF] Board" was properly withdrawn by Mr. Richardson prior to the approval of the Board. If we find that the settlement agreement was properly withdrawn and that the case has not been settled, we must then consider the LPCF's appeal of the trial court judgment on a jury verdict on the merits of the case, which awarded Mr. Richardson a total of $580,289 in damages he incurred as a result of the alleged malpractice of defendant, Dr. Suzette S. Kileen. For the reasons set forth below, we find that Mr. Richardson properly withdrew the settlement and reverse the trial court judgment granting the LPCF's Motion to Enforce Settlement. On the merits of the case, we affirm the trial court judgment in favor of Mr. Richardson in its entirety, and remand to the trial court for a hearing on the intervention for attorney's fees filed by Mr. Richardson's original attorney.
Facts
Sometime in July 1994, Mr. Richardson began to experience vision problems in his right eye. He consulted defendant, Dr. Alvaro O'Byrne, who diagnosed retinal artery occlusion, commonly called a "mini-stroke." On August 11, 1994, he first consulted Dr. Killeen, who confirmed Dr. O'Byrne's diagnosis. Because Mr. Richardson's retina was cloudy, Dr. Killeen prescribed medication and instructed Mr. Richardson to return the next day. When he reported back to Dr. Killeen on August 12, 1994, she diagnosed neovascular glaucoma, a complication of the arterial occlusion to a retinal blood vessel. Dr. Killeen then instituted a course of laser therapy. When the laser therapy was unsuccessful, Dr. Killeen began cryotherapy. However, she was unsuccessful at saving Mr. Richardson's vision in his right eye. Eventually, Mr. Richardson's eye was removed.
Mr. Richardson instituted a medical malpractice proceeding, which resulted in a written unanimous opinion that Dr. Killeen did not breach the standard of care in her treatment of Mr. Richardson. Thereafter, Mr. Richardson's claims were tried to a jury, resulting in a verdict in favor of Mr. Richardson for $580,289, plus court costs and expert witness fees. On May 17, 2000, the trial court rendered judgment on the jury verdict, awarding Mr. Richardson $100,000 plus interest and costs against Dr. Killeen and her insurer, and assessing the balance of the jury verdict plus judicial interest against the LPCF. On May 31, 2000, Dr. Killeen filed a motion for judgment notwithstanding the verdict, which the trial court denied on June 19, 2000. Dr. Killeen filed a Petition for Appeal on July 13, 2000. On August 28, 2000, the LPCF filed a Petition for Intervention in the action, which was approved on November 15, 2000.
*1017 On January 2, 2001, this court granted a Joint Motion to Remand the case to the trial court for purposes of approving a pending settlement agreement between Dr. Killeen and Mr. Richardson. Despite the LPCF's objection to the settlement, the trial court issued judgment on January 5, 2001, approving Mr. Richardson's settlement agreement with Dr. Killeen and her insurer in the amount of $121,720.20, reserving all of Mr. Richardson's rights to pursue further claims against the LPCF, and reserving all rights to the LPCF. On January 9, 2001, Mr. Richardson filed a Satisfaction of Judgment and a Motion and Order of Partial Dismissal of Dr. Killeen and her insurer. The trial court signed the Motion and Order of Partial Dismissal on January 16, 2001. On February 13, 2001, the LPCF filed a Petition for Appeal of the trial court judgment on the merits, which was signed by the trial judge the same day. When the LPCF's appeal was submitted to this court, it was assigned appeal No.2001-CA-1697 c/w 2000-CA-2202.
While the LPCF's appeal was pending, the parties submitted the case to mediation, after which Mr. Richardson handwrote the following statement:
I, Clifton Richardson, accept $285,000 Two Hundred Eighty Five Thousand Dollars and no cents from the La. Patients' Compensation fund [sic] as full and final settlement of my medical malpractice case against Killeen, O'Byrne, and the La. Patients' Compensation Fund, subject to the approval of the Board which meets on December 6th, 2001.
The document, which is dated November 7, 2001, is signed by Mr. Richardson's attorneys and by representatives of the LPCF.
However, later the same afternoon, Mr. Richardson sent the following hand-written statement by facsimile transmission to the mediator and to the representatives of the LPCF:
Dear Gentlemen:
I must bring to your attention very urgently calculation error at today's mediation meeting with Mr. Williams.
Having decided to accept $215,000 as the basis from 430,000.00

Interest to date 235,395.15 $117,692.57
 $665,385.15
 $332,692.57

On the basis of the Arithmetic $285,000 is Completely Wrong and I am attaching a print out for your information.
Therefore, I am demanding a Correction by law.
 Signed C.G. Richardson
Two days later, on November 9, 2001, Charles D. Elliott sent a letter to the mediator and to a representative of the LPCF on Mr. Richardson's behalf, stating, in pertinent part, as follows:
We have been retained by Clifton Richardson to assist him in this matter. He discharged his previous attorneys some time ago. Mr. Richardson has obtained a significant judgment against the PCF. There was a mediation in this case on November 7, 2001. At that mediation, representations were made to Mr. Richardson that the legal interest accrued amounted to $140,000. The PCF offered half of the judgment amount ($215,000) and half of what was represented to be legal interest ($70,000) for a total of $285,000.
After the mediation, Mr. Richardson learned that the legal interest that had accrued was in fact $235,385.15 (as of November 8). That amount does not include interest on any unpaid courts costs, which are also owed by the PCF. Because of this misrepresentation and error, Mr. Richardson hereby notified *1018 you that his offer of settlement is withdrawn, as it has not yet been accept by the PCF. It is my understanding that Mr. Richardson has already notified you of his intention to withdraw that offer. There was a substantial difference in the amount of interest owed and the amount represented as owed. Mr. Richardson is legally entitled to revoke his offer, as it has not been accepted.
Nevertheless, the settlement agreement was reportedly approved by the LPCF on November 26, 2001. On December 18, 2001, the LPCF filed a Motion to Enforce Settlement, along with a Motion and Order for Expedited Hearing in the trial court. Despite opposition from Mr. Richardson, the trial judge granted the Motion to Enforce Settlement on January 18, 2002. In his reasons for judgment, the trial court stated as follows:
The Court finds that the stamp of approval by the Patient's Compensation Fund was merely a formality and that this matter was compromised when the parties, including the plaintiff, personally appeared in Court several weeks earlier and agreed to a settlement of this matter. It is the Court's understanding that no settlement has ever been denied by the Patient's Compensation Fund when it was submitted for their approval.
On January 25, 2002, Mr. Richardson filed a devolutive appeal from the judgment granting the Motion to Enforce Settlement, which was granted on January 29, 2001. When Mr. Richardson's appeal was submitted to this court, it was assigned appeal No.2001-CA-0753.
On February 19, 2002, the LPCF filed an Exception of Res Judicata and Motion to Dismiss is own appeal No.2001-CA-1697 c/w 2000-CA-2202. Mr. Richardson responded by requesting that his appeal No.2001-CA-0753 be consolidated with the LPCF's appeal No.2001-CA-1697 c/w 2000-CA-2202. This court consolidated the two appeals by order dated April 1, 2002.

VALIDITY OF SETTLEMENT AGREEMENT
The sole issue in Mr. Richardson's appeal No.2002-CA-0753 is whether the trial court judgment granting the LPCF's Motion to Enforce Settlement was correct. La. C.C. art. 3071 defines a "transaction" or "compromise" as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced to writing or recited in open court and capable of being transcribed from the record of the proceeding.[1] The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
"A compromise is valid if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached." Dimitri v. Desalvo, 2000-2641, p. 2 (La App. 4 Cir. 1/30/02), *1019 809 So.2d 481, 484. "Compromise agreements are legally favored, and the party seeking to establish the invalidity of a compromise agreement has the burden of proof." Id. Thus, Mr. Richardson has the burden of proving that the alleged compromise agreement is invalid in the instant case.
As with other contracts, when the words of a compromise agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Id. Thus, we note initially that the language of the compromise agreement at issue in the instant case clearly and explicitly makes the compromise agreement "subject to the approval of the [LPCF] Board."
Nevertheless, the LPCF argues, and the trial court apparently found, that the statement handwritten by Mr. Richardson and signed by his attorneys and representatives of the LPCF was sufficient to meet the requirement that a compromise agreement be reduced to writing. The trial court then found that the provision concerning the approval of the LPCF Board was a "merely a formality." This finding was itself based on the trial courts "understanding" that the LPCF Board had never denied a settlement submitted for its approval.
However, Mr. Richardson argues that the express provision in the agreement that made it "subject to the approval of the [LPCF] Board" was a suspensive condition as defined by La. C.C. art. 1767, which provides, in pertinent part, as follows:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
Because the written agreement contained an express suspensive condition, Mr. Richardson argues, the agreement was not enforceable by either party until the LPCF Board approved the settlement. Because the agreement was not enforceable, his timely revocation of the settlement was valid, he asserts. In support of his arguments, Mr. Richardson cites this court's opinion in National Co. v. Navarro, 149 So.2d 648 (La.App. 4 Cir.1963).
In National Co., this court considered the validity of a contract between National Co. and the defendants, the Navarros, whereby the Navarros agreed to allow National Co. to apply siding to their Nashville Avenue residence in the City of New Orleans. Id. The contract, which was signed on October 18, 1961, contained the following provision:
This contract is binding, subject only to acceptance by an executive of the NATIONAL ROOFING & SIDING CO., who reserves the right to reject it without liability on its part.
Id. at 650. The next day, October 19, 1961, Ms. Navarro telephoned the National Co. salesmen with whom she and her husband had been dealing and told him they desired to cancel the contract. Id. Applying former La. C.C. art. 1880, this court found that the Navarros had timely revoked their offer to allow National Co. apply siding to their residence before it had been accepted by an executive of National Co. Id.
The language of former La. C.C. art. 1880, on which the court relied to find that the contract was invalid in National Co., was very different from the language of any of the current Louisiana Civil Code articles governing obligations, as it specifically delineated the type of acceptance required for formation of a valid agreement. Nevertheless, a close review of the Louisiana jurisprudence concerning validity of agreements, including compromise agreements, *1020 reveals that the salient question that must be answered to determine if an agreement is enforceable is whether a valid offer and acceptance has occurred. Because a compromise is an agreement or contract between two or more persons, a compromise, like other contracts, must be formed by consent of the parties through offer and acceptance. Autin-Germany v. Germany, 00-1924, p. 4 (La.App. 5 Cir. 4/11/01), 789 So.2d 608, 611. It follows that an enforceable compromise agreement formed by offer and acceptance, may not be revoked by either party. The "flip side" of this principle is that an agreement that has not been formed by offer and acceptance is not enforceable and therefore can be revoked by either party.
In the instant case, the LPCF argues that the express provision that the settlement agreement was "subject to the approval of the Board" was merely a formality, not a suspensive condition. However, the LPCF's attorney admitted during oral argument in this court that the LPCF Board was not required to accept the settlement agreement and that it could have elected not to approve the settlement. Thus, the LPCF argues that the compromise was final and irrevocable from Mr. Richardson's point of view, while at the same time asserting that the compromise was subject to a suspensive condition and therefore revocable from it's own point of view. The LPCF cannot have it both ways. If the compromise was final, neither party could revoke; if the compromise was not final until the LPCF Board had given its approval, either party could revoke until that time.
Our consideration of the language of the compromise agreement itself, (which, as we have already noted, is clear and explicit) in light of the arguments and admissions of the parties, the relevant codal articles, and the applicable jurisprudence, convinces us that Mr. Richardson made the offer to settle his claim against the LPCF when he handwrote the statement signed by his attorneys and representatives of the LPCF. Acceptance of Mr. Richardson's offer could not occur until the offer was approved by the LPCF Board. Thus, the compromise agreement was not final when Mr. Richardson sought to revoke his offer the same day that the offer was made, prior to approval by the LPCF. Accordingly, the trial court abused its discretion when it granted the LPCF's Motion to Enforce Settlement. The trial court judgment granting the motion is hereby reversed, and the motion is hereby denied. Mr. Richardson's other arguments on this issue are hereby pretermitted.

LPCF'S APPEAL OF THE JUDGMENT AGAINST DR. KILLEN
In its appeal No.2001-CA-1697 c/w 2000-CA-2202, the LPCF appeals the trial court judgment awarding Mr. Richardson $580,289 in damages, raising liability and quantum issues, as further detailed below. However, as a preliminary matter, this court must decide whether the LPCF is precluded by LSA-R.S. 40:1299.44(C)(5) from appealing the jury's finding that Dr. Killeen is liable for Mr. Richardson's injuries because Dr. Killeen settled with Mr. Richardson after the trial for $100,000 or more. This court has recently decided this issue in Dawes v. Kinnett, 99-3157, 99-3158, 99-3159 (La.App. 4 Cir. 1/17/01), 779 So.2d 978, in which the court found that the prohibition applies only to pre-trial settlements, not to post-trial settlements. The pertinent language follows:
Although Mr. and Mrs. Dawes urge this Court to hold that the provisions of La. R.S. 40:1299.44C(5) apply to both pre-trial and post-trial settlements, after *1021 reviewing the statutory history and related jurisprudence, we find no basis to do so. We agree with the Fund that Dr. Kinnett's $135,000.00 payment in partial satisfaction of the judgment against him cannot be construed as a settlement within the meaning of La. R.S. 40:1299.44C(5). Therefore, the trial court's findings as to Dr. Kinnett's negligence and fault are reviewable in this appeal.
Id. at 7, 779 So.2d 982. Thus, the LPCF can appeal the trial court's finding that Dr. Killeen is liable for Mr. Richardson's damages.
Liability of Dr. Killeen
In order to be entitled to recovery of damages caused by a defendant physician's alleged medical malpractice, the plaintiff faces a "two-fold burden": (1) "to establish by a preponderance of the evidence that the physician's treatment fell below the ordinary standard of care in his medical specialty"; and (2) "to prove a causal relationship between the alleged negligent treatment and the resulting injury." La. R.S. 9:2794 Slavich v. Knox, 99-1540, p. 3-4 (La.App. 4 Cir. 12/15/99), 750 So.2d 301, 303. The standard of review in medical malpractice cases is manifest error. Id. at 4, 750 So.2d at 303.
The LPCF asserts that the trial court's findings in the instant case were manifestly erroneous because Mr. Richardson failed to carry his burden of proving the first item listed abovei.e., "that the physician's treatment fell below the ordinary standard of care in his medical specialty." First, the LPCF asserts that Mr. Richardson failed to establish the standard of care though the testimony of its expert witness, Dr. David Newsome. At the same time, the LPCF states as follows:
All medical experts, including Dr. Newsome, agreed that the patient had a diagnosis of nonvascular glaucoma. Standard of care required destruction of retinal tissue in order to prevent production of new blood vessels. All experts agreed that proper methodology consisted of laser therapy and cryotherapy, or freezing treatment within 7 to 10 days
The LPCF's brief also lists the "highlights of Dr. Newsome's testimony regarding the standard of care." Thus, the LPCF admits that the standard of care was established at the trial in this matter.
Moreover, the Louisiana Supreme Court has previously held in a case in which the plaintiff failed to present any expert testimony whatsoever that a plaintiff can, as a general rule, "prevail under such circumstances when a defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts." Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992 (La.10/17/94), 643 So.2d 1228, 1230, cited by this court in McDaniel v. Reed, 2000-2529, p. 3 (La.App. 4 Cir. 10/3/01), 798 So.2d 1121, 1123. Thus, we find no merit in the LPCF's argument regarding the lack of evidence presented by Mr. Richardson regarding the standard of care.
The LPCF also argues that Dr. Newsome's expert testimony was insufficient to prove that Dr. Killeen's treatment of Mr. Richardson fell below the ordinary standard of care owed by a general opthalmologist treating nonvascular glaucoma. The following standard of review applies to the verdict of a properly-instructed jury in a medical malpractice case:
"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong....

*1022 [A]ppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... [W]here a factfinder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Moore v. Wal-Mart, Inc., 98-1806, p. 4 (La.App. 4 Cir. 3/10/99), 729 So.2d 187, 189.
In the instant case, all of the witnesses presented by Dr. Killeen testified that her treatment of Mr. Richardson met the applicable standard of care because she provided initial treatment with lasers, followed by cryotherapy treatment. However, Mr. Richardson's expert, Dr. Newsome, testified that the laser treatment Dr. Killeen provided to Mr. Richardson was completely inadequate under the circumstances of this case both because the spots themselves were only half the size they should have been and because an inadequate number of laser spots were applied. Thus, the jury's finding that Dr. Killeen's treatment fell below the appropriate standard of care was based on its finding that Dr. Newsome's testimony on this issue was more credible than the testimony of Dr. Killeen's witnesses. A factfinder's finding based on its decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Collins v. State ex rel.
Louisiana Health Care Authority, 99-2307, p. 12 (La.App. 4 Cir. 7/12/00), 774 So.2d 167, 174.
The LPCF also argues that Dr. Newsome's testimony was insufficient because it failed to meet the standards set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert test was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993), and applied to La. C.E. art. 702. However, "Daubert fashioned a standard that requires the trial court to act in a `gatekeeping' function to ensure that all scientific testimony or evidence admitted is not only relevant, but also reliable." Doerr v. Mobil Oil Corp. And Chalmette Refining, L.L.C., XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135 . Under Daubert, a trial court is required to balance the probative value of evidence against its prejudicial effect in order to determine whether it is reliable and will aid the jury in reaching a decision. Id.
In the instant case, trial counsel neither objected to the admissibility of Dr. Newsome's testimony nor raised the issue of whether the evidence met the Daubert standards; however, the LPCF was not a party to the trial and therefore could not raise the issue. Therefore, we have carefully reviewed the record evidence concerning Dr. Newsome's qualifications, as well as the substance of his expert testimony on the liability issues in this case, and find nothing to indicate that Dr. Newsome's testimony violated the standards established by Daubert. Moreover, we note that the only concern of the Daubert, standards is whether the evidence is admissible, not whether the evidence is sufficient to meet the plaintiff's burden of proof, as the LPCF argues.
*1023 Accordingly, we find no merit in any of LPCF's arguments concerning the sufficiency of Dr. Newsome's testimony to meet Mr. Richardson's burden of proving the appropriate standard of care or that Dr. Killeen's treatment fell below that standard of care. The jury's finding on this issue is based on the its decision to credit the testimony of Dr. Newsome over the testimony of Dr. Killeen's expert witnesses, which can never be manifestly erroneous, and on the jury's findings of fact on the standard of care issue presented by this case. Thus, we affirm the jury's finding that Dr. Killeen's treatment of Mr. Richardson fell below the applicable standard of care.
Comparative negligence
The LPCF also argues that the jury improperly failed to assign any comparative negligence to Mr. Richardson. In support of this argument, the LPCF points to the fact that Mr. Richardson's failed to consult Dr. Killeen until two weeks after he was diagnosed with neovascular glaucoma. Although the experts who testified on behalf of Dr. Killeen did indicate that treatment within 10 days is necessary when a person has neovascular glaucoma, Dr. Newsome testified that Dr. Killeen had two clear opportunities to save Mr. Richardson's eyeon August 12, 1994, and August 26, 1994. However, Dr. Newsome stated, Dr. Killeen failed to take advantage of those opportunities because she failed to administer adequate treatment on those dates. Accordingly, we find no merit in the LPCF's arguments that Mr. Richardson should have been assigned comparative negligence in this case.
Damages
The LPCF claims that the trial court awarded Mr. Richardson excessive damages under the facts of this case. Specifically, the LPCF argues that Mr. Richardson was not entitled to damages for loss of a chance to save his eye or for loss of earning capacity, which are both items of general damages. Initially, we note that the record in this case does not contain the jury verdict form, but only the judgment awarding Mr. Richardson damages totaling $580,289. Generally, an appellate court is required to "defer to the great, even vast discretion of the trier of fact in the assessment of general damages." Harvey v. Cole, XXXX-XXXX, p. 7 (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
Concerning the damages awarded Mr. Richardson for loss of a chance to save his eye, the LPCF again argues that Mr. Richardson's own failure to timely seek medical treatment caused the loss of that chance. However, as noted above in our discussion of Mr. Richardson's alleged comparative negligence, Dr. Newsome, who the jury obviously believed, testified that Dr. Killeen had two clear chances to save Mr. Richardson's eye, on August 12, 1994 and on August 26, 1994, which she did not take because she failed to administer adequate treatment. Thus, we find no abuse of the trial court's discretion in awarding Mr. Richardson damages for loss of a chance to save his eye.
Concerning the damage award for loss of earning capacity, the LPCF argues that Mr. Richardson failed to present any medical evidence to indicate that he was totally disabled as a result of the loss of his eye, other than his own self-serving testimony. Further, the LPCF argues that Mr. Richardson did not lose any actual wages because his job description at Cox Cable was changed after the loss of the eye to remove the requirement that he climb ladders. Thus, the gravamen of the LPCF's arguments on this issue is that Mr. Richardson did not lose any actual wages as a result of the loss of his eye.
*1024 This court has previously discussed damages for loss of earning capacity, stating as follows:
Loss of earning capacity refers to a person's potential and compensates a victim for his lost ability to earn in the future. Masters v. City of New Orleans, 94-2349, p. 2 (La.App. 4 Cir. 9/28/95), 662 So.2d 125, 126. The trial court should consider plaintiff's physical condition before the accident, plaintiff's work record, amount earning in previous years and the probability that except for the injury the plaintiff would have earned similar wages the rest of (her) life. Id.

The plaintiff's earnings at the time of the accident are relevant but not necessarily indicative of her past or future earning capacity. Finnie v. Vallee, 620 So.2d 897, 900 (La.App. 4 Cir. 5/27/93), writ denied by 625 So.2d 1040 (La.1993). As stated by this Court in Finnie, "[w]hat is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity." Id.

Hoyt v. Gray Ins. Co., 2000-2517, p. 4 (La.App. 4 Cir. 1/31/02), 809 So.2d 1076.
Mr. Richardson, who was born in Trinidad in the West Indies, was approximately 50 years old at the time he lost his right eyeball. He had been trained and approved as an electrician in England in the late 1960's; he owned his own electric business in England for more than ten years. He later moved to the United States, where he worked as an electrician for a number of years. At the time he developed neovascular glaucoma, he had been employed by Cox Cable in New Orleans, Louisiana for about six or eight months. He later lost that job because of his disability caused by his lost eyesight. Mr. Richardson claims that he is now disabled to perform the work he is trained to perform. Considering the above record evidence, we find no abuse of the trial court's vast discretion in awarding Mr. Richardson damages for loss of earning capacity. Finding no merit in any of the LPCF's arguments on damages, we affirm the trial court's jury verdict on the merits of the case, which awarded Mr. Richardson a total of $580,289 damage award to Mr. Richardson, subject both to credits for settlements and to the statutory limits established by the Medical Malpractice Act.

INTERVENTION FOR ATTORNEY'S FEES
Mr. Richardson's former attorneys, Frank J. D'Amico Jr. and Judith A. Gic filed an intervention in this court, attaching their contingency fee contract with Mr. Richardson and requesting that they be granted a lien against the judgment in favor of Mr. Richardson for their attorneys fees, costs, advances and other sums to which they are entitled. We have granted that intervention and hereby remand to the trial court for determination of the amount due Mr. Richardson's attorneys.
GRANTING OF mOTION TO ENFORCE SETTLEMENT REVERSED; MOTION TO ENFORCE SETTLEMENT DENIED; JUDGMENT ON THE MERITS AFFIRMED; INTERVENTION GRANTED; CASE REMANDED FOR DETERMINATION OF ATTORNEY'S FEES.
LOVE, J., concurs with reasons.
LOVE, J., concurring with reasons.
I concur in the majority's conclusion, however, I write separately as it relates to the LPCF's assignment of error relative to Dr. Newsome's testimony. The LPCF argues *1025 that Dr. Newsome's testimony was insufficient because it failed to meet the standards set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The LPCF was not a party to the trial and, therefore, the issue was not raised at trial. Daubert is an issue that must be addressed initially at the trial court. Therefore, any discussion as to the merits of the Daubert challenge should in no way be interpreted as an issue considered by this court.
NOTES
[1] Although the trial court stated in its reasons for judgment that the parties to this action had appeared in Court and agreed to settle this matter, the record does not contain a transcript or other evidence that the parties actually recited a compromise in open court. Moreover, the LPCF does not argue on appeal that the compromise was recited in open court. Accordingly, this court finds that the trial court was in error on this issue.